CASE 96.—INDICTMENT AGAINST THE ILLINOIS CENTRAL RAILROAD COMPANY FOR MAINTAINING A PUBLIC NUISANCE.—June 3, 1910.

## Commonwealth v. Ill. Cent. R. R. Co.

Appeal from Ballard Circuit Court.

R. J. Bugg, Circuit Judge.

From a judgment overruling a demurrer to its answer the Commonwealth appeals.—Affirmed.

1. Municipal Corporations—Powers—Opening and Closing Streets.—In the absence of any special authority, a city of the fifth class has power under Ky. St. section 3637, subsec. 7, authorizing the city council to do and perform any acts necessary and proper to carry out the provisions of the chapter, and to enforce within the limits of the city all local regulations not conflicting with general laws to open, close, or alter streets, and it may close a street, and authorize, for a valuable consideration, a railroad to construct and maintain its roadbed over the same.

2. Municipal Corporations—Powers—Control of Streets.—The authorities of a city have control over the streets thereof, and neither the state nor the county authorities can interfere with the city in the management of its streets, and, so long as the acts of the city officers are within the scope of their authority, their acts cannot be questioned.

3. Municipal Corporations—Closing or Altering Streets—Liability.—Where, in opening, closing, or altering streets, individuals are injured in their property rights, they may sue at law for damages, and the fact that a street has been opened, closed, or altered by an ordinance duly enacted does not deprive an individual of the right to compensation for the injuries sustained.

4. Railroads—Indictment for Public Nuisance—Obstructing Streets.—A railroad constructing and maintaining its road across a street, pursuant to a municipal ordinance vacating the street and authorizing the railroad for a consideration to maintain its railroad over the same, is not guilty of maintaining a public nuisance in a street.

JAS. BREATHITT attorney general and TOM B. McGREGOR assistant attorney general for Commonwealth.

TRABUE, DOOLAN & COX, C. L. SIVLEY, ROBBINS & THOMAS and CORBETT & WHITE for appellee.

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

Appellee was indicted in the Ballard circuit court, charged with constructing and maintaining a public nuisance by building and operating its roadbed across the junction of Fourth and Illinois streets, in the town of Wickliffe, a city of the fifth class. To this indictment appellee filed a written plea, in which it set up that it was not guilty for the reason that its roadbed and crossing at the point in said town complained of in the indictment had been built and maintained under and by virtue of an ordinance of the town of Wickliffe, duly enacted, whereby its lessor, its successors, and assigns had, for a valuable consideration, been granted the right to construct and maintain its road on said crossing exactly as it had been done and was then doing. A demurrer was filed to this answer and overruled. The commonwealth declined to plead further, and judgment was

entered for the defendant.  The commonwealth appeals.

The demurrer admits the facts pleaded in the answer to be true, but, it is contended for the commonwealth, although appellee was acting under an ordinance of the city as claimed, still no protection is afforded it thereby, for the reason that the city had no power or right to pass such an ordinance or grant appellee such a privilege.  The trial judge was of opinion that the facts pleaded constituted a good defense, and so held.  We are called upon to review his finding upon this point.  The questions presented for consideration, in their logical order, are: First, had the council of the town of Wickliffe the right or power to pass the ordinance in question; and, second, if it had such right, and passed the ordinance, as it is conceded was done, may appellee still be proceeded against by indictment for obstructing the street?

Section 156 of the Constitution divides all cities of the state into classes, and the Legislature has by appropriate laws made provision for their government.  In the laws enacted for the government of cities of the fifth class, we do not find that the Legislature has specifically given to the council the right or power to open, close, or alter streets as it has done in regard to cities of some other classes.  Still the city is an arm or branch of the state government, and authority must rest somewhere for the opening, closing, or altering of streets.  Certain it is that the Legislature did not intend that cities of the fifth class should be without power to make such changes in their streets as the necessity of the occasion from time to time required.  In the absence of any special authority delegated to the city in its charter, the general laws enacted for the government of cities of

the fifth class must be looked to. In subsection 7 of section 3637, defining the powers of the city council, we find that the council is empowered "to do and perform any and all acts and things necessary and proper to carry out the provisions of this chapter, and to enact and enforce, within the limits of such city, all other local, police, sanitary, and other regulations as do not conflict with general laws." This provision is certainly broad enough to enable the city council to pass any ordinance that is necessary for the public good, so long as it is not in conflict with the general laws. The city authorities have control over the streets of the city, and neither the state nor county authorities can interfere with the city government in the management of its streets. The council are the judges of the necessities and wants of the city. The members thereof are elected by the inhabitants of the city, and it is presumed that they will act for its best interests. Their conclusions and acts, so long as within the scope of their authority, are not open to question. Of course, if it were shown that the city council had acted maliciously or corruptly, a case might be presented which would justify judicial interference; but no such showing is made here. If, in opening, closing, or altering a street individuals are injured in their property rights, they have their remedy in an action at law for damages, and the fact that the street has been opened, closed, or altered by an ordinance duly enacted cannot operate to deprive the individual of his right to be compensated for the injury which he sustains by reason thereof. But the right of the individual to damages for the injury sustained does not enter into the consideration of the question here, for it is the right of the general traveling public, and

not of the individual, that is involved in this litigation. The county court is given the right and power to open, close, or alter public roads. The county is a branch of the state government, and enjoys this right by express statutory provision. The various cities sustain the same relation to the state that the counties do, and they are, in so far as the cities of the first, second, third, and fourth classes are concerned, by legislative enactment given express authority to open, close, alter, or change the grade of their streets. While this express authority is not given to cities of the fifth class, it is necessarily implied.

Counsel for appellee rely upon the case of Henderson v. City of Lexington, 111 S. W. 321, 33 Ky. Law Rep. 703, 22 L. R. A. (N. S.) 20, as being conclusive of the rights of the city to pass such an ordinance; while counsel for appellant contend that this case is not authority, for the reason that the charters of cities of the second class give to council express authority to open, close, or alter streets, and it is contended that this opinion is rested upon this charter right. An examination of the opinion, however, shows that this position is not well taken, for it is therein said: "But municipalities and counties are agencies and subdivisions of the state. The streets, alleys, and highways of a municipality are public places. They are under the exclusive control of the municipality. And, when the properly constituted authorities declare that the necessities, welfare, comfort, and convenience of the public demand that private property shall be taken or that public ways shall be closed, the municipality is merely exercising a public function, such as the county courts exercise in the opening or closing of pub-

lic roads. And it must be assumed that the officers of the city as public agents will exercise with wisdom and discretion the power lodged in their hands. They occupy towards the public a different relation from the officers and agents of private corporations. The latter it may be presumed are largely, if not altogether, influenced in the acquisition of property by the interest of the corporation they represent, and are more concerned with the private affairs intrusted to their care than they are in the welfare of the public. Therefore, when a private corporation desires to take private property, it must, if the matter is put in issue, affirmatively show by evidence that the property is needed for its use in the performance of its duties to the public. On the other hand, when a municipal corporation, invested by the Legislature with the power to close streets, alleys, and highways, or to acquire property, undertakes to exercise the power, the presumption will be indulged that it is in the interest of and for the benefit of the public, and that the proceeding is not for private or individual use or advantage. And so, if a municipality ordains that an alley or highway shall be closed, or a street opened, it will be presumed that it is done in the interest of the public.'' It will be noted that the opinion deals with the rights of municipalities in general and recognizes in each the power to regulate and control its streets in such way as its officers deem necessary for the public good and to the best interests of its citizens. And this idea is in accord with that announced in 2 Dillion on Municipal Corporations, section 654, in which he says: ''Municipal corporations in this country sustain most important relations to streets and highways within their limits. By statute or charter they are usually authorized to

open, establish, alter or vacate streets." And in section 666: "The plenary power of the Legislature over streets and highways is such that it may, in the absence of special constitutional restriction, vacate or discontinue them or invest municipal corporations with this authority." The Legislature has not, by direct enactment, authorized councils of cities of the fifth class to open, close, or alter the streets of such towns, but, by virtue of the general authority given the board of council for such towns to do any and all things that are necessary for the public good, this right as to the management of the streets and highways must be inferred, as to hold otherwise would be to leave such cities without authority as to the management of their streets, and, the city being a separate entity or government, so far as its local affairs are concerned, authority would be lodged nowhere to open, close, or alter its streets. The development, growth, and material prosperity of the city, as well as the comfort and convenience of its citizens and the traveling public, is dependent upon the manner in which the public affairs of the city are conducted. Among these that of primary importance is the construction and maintenance of its streets and public ways. It cannot be presumed that the Legislature contemplated that the city authorities were to be without power to make such changes in their streets as necessity might from time to time require, and, as this specific authority is nowhere given, we are of opinion that it is covered by subsection 7 of section 3637, above referred to. The city council had the right to pass the ordinance closing the street in question and authorize the appellee for a valuable consideration to construct its roadbed over same. Such ordinance in no wise deprived individuals of

their right to recover any damage which they sustained by reason of the closing of the street or the construction of the railroad over same. It is presumed that the council, in enacting such ordinance, acted for the best interests of the city, and regarded that the benefits which would accrue to the general public would more than offset the inconvenience suffered because of the passage of said ordinance and the closing of the street.

This brings us to a consideration of the question as to whether or not the commonwealth may prosecute, by indictment, the railroad for having obstructed the street under such circumstances. A criminal prosecution presupposes some wrongdoing. In this case the street has been obstructed, and, while appellee admits that it placed the obstruction therein, it pleads that in so doing it violated no law and did no wrong, for the reason that the city authorities, with full power to act, closed the street, and authorized and directed the obstruction placed therein. The city being a branch of the government, its acts, in so far as they are within the scope of its authority, are the acts of the commonwealth. We are cited to no authority which would justify the state in punishing one for doing an act which it had, for a valuable consideration, authorized to be done. Such a proceeding would not only be unsupported by precedent, but would be most oppressive and unjust to the subject, who had acted in perfect good faith with the government. In Beach on Municipal Corporations, the rule is laid down that, where a public corporation acts under municipal or legislative license, it cannot be prosecuted for obstructing a highway or street of a town, although it may be made answerable in a suit for damages to any individual for damages

sustained by reason of such obstruction. This principle was recognized and announced by this court in the case of J. M. & I. R. R. Co. v. Esterle, 13 Bush, 675, wherein the court said: "The appellants are not mere trespassers. They entered upon the street with the approval and express consent of the city authorities, and they have the right, so far as the general public is concerned, to keep and maintain their railway tracks, and to pass their trains over them; but notwithstanding this license, if the said tracks had been so located as to unreasonably obstruct appellee's means of ingress or egress over Fourteenth street to and from his lot, or if his houses have been injured by having smoke, sparks, or cinders thrown or blown into or upon them, or if their walls have been cracked by the rapid movement of heavy trains of cars, he is entitled to recover for the damages directly resulting from all or any one or more of these causes." To the same effect is Willis v. K. & I. Bridge Co., 104 Ky. 186, 46 S. W. 488, 20 Ky. Law Rep. 475. These authorities settle this point conclusively against the contention of the commonwealth.

The judgment is affirmed.