## Eichenlaub, Appellant, v. City of Erie.

*Municipalities—Cities of third class—Public streets—Power to vacate.*

A city of the third class has power to annul, vacate or discontinue a street originally laid out, opened and dedicated by the Commonwealth, whenever the municipal authorities deem it expedient for the public good; and a bond issue authorized by ordinance for the purpose of constructing subways across a vacated street is valid and will not be enjoined on the ground that the easement over such vacated street granted in the original deeds from the Commonwealth constituted a contract which could not be impaired by act of the city.

Argued April 25, 1916.    Appeal, No. 42, Jan. T., 1916, by plaintiff, from decree of C. P. Erie Co., Feb. T., 1916, No. 2, dismissing bill in equity for injunction in case of V. D. Eichenlaub v. City of Erie, William J. Stern, Mayor, C. L. Baker, Theodore Eichhorn, John C. Dundon and Frank E. Pelow, Councilmen.    Before BROWN, C. J., MESTREZAT, POTTER, STEWART and MOSCHZISKER, JJ. Affirmed.

Bill in equity for injunction to restrain bond issue by City of Erie.

The facts appear in the following findings of fact, conclusions of law and opinion by WHITTELSEY, J.:

The bill in this case was filed to restrain the defendants from selling and delivering, or attempting to sell and deliver, any of the bonds of the City of Erie under and by virtue of the authority contained in Ordinance Bill No. 4108, passed by the council of the City of Erie and approved December 16, 1915; and also to restrain the defendants from carrying out or attempting to carry out the provisions of the contract entered into by them the 30th day of September, 1915, with the New York Central Railroad Company, The Pennsylvania Company (operating the Erie and Pittsburgh Railroad Company) and the Pennsylvania Railroad Company; or in attempting to close temporarily or otherwise any of the streets of the City of Erie, or from entering into any contract with any person, firm, or corporation, providing or permitting the obstruction in any way or manner, of any of the streets of the City of Erie.

The case was heard upon bill, answer, testimony and stipulation of counsel as to the facts in the case.

From said testimony and stipulation the facts are found as follows:

First: The City of Erie is a city of the third class and was laid out in three equal parts about the year one thousand eight hundred and two by commissioners appointed by the governor of the Commonwealth under the provisions of an act of assembly approved April 18, 1795, 3 Sm. L. 233, in inlots and outlots; the southern line of inlots being what is known as Twelfth street, the southern line of outlots being what is known as Twenty-sixth street; between each row of inlots and outlots streets were laid out from the southern bank of Lake Erie to Twenty-sixth street, which streets were crossed at right angles by numbered streets running north and south, being designated by name.

The act of assembly referred to provides that the said highways shall remain open as common highways of the Commonwealth forever, and since that time, the same with the exception of the streets in the third section and several other streets in the first and second sections are now open and used as common highways of the city and Commonwealth.

Second: By the act of assembly, approved April 8, 1833, P. L. 243, the Commonwealth conveyed the entire third section of the City of Erie to the city and vacated all of the streets therein equal in number and length to about one-third of the entire street area of the city, that the inlots and outlots in the first and second sections were sold by the Commonwealth and the purchase-money thereof paid as appears by the records in the recorder's office of Erie County, Pennsylvania. That land in the third section was sold by the City of Erie as acreage, all the streets therein discontinued and the land generally used for agricultural purposes.

Third: Until the year one thousand eight hundred forty-eight, the southern line of the town or borough of Erie was Twelfth street, the southern line of the inlots. The land covered by the outlots until one thousand eight hundred forty-eight was a part of the Township of Mill Creek, Erie County, Pennsylvania, and had no connection with the Borough of Erie.

Up to the present time, all of the streets running from the lake southward to Twenty-sixth street in the first and second sections of the City of Erie cross railroad tracks which were constructed subsequent to the laying out of the City of Erie over and upon the said outlots at grade excepting at Ash street, State street, French street, and Liberty street, where the railroads cross on subways, and Wayne street which was closed under a contract with the railroad when a subway at Ash street was constructed.

Fourth: On the thirtieth day of September, one thousand nine hundred and fifteen, the City of Erie, through its city council, by virtue of an ordinance entered into a

contract with the New York Central Railroad Company, The Pennsylvania Company, operating the Erie and Pittsburgh Railroad, and the Pennsylvania Railroad Company, for the abolition of certain grade crossings within the City of Erie, for the construction of subways at Parade street, Division street, Peach street, Sassafras street, Chestnut street, and Cherry street, at the joint expense of the city and the railroads; and further providing as follows:

"Holland, German, Myrtle, Walnut, Poplar and Plum streets, shall be closed to public travel within the area marked "to be closed," on exhibit A, and shall not be opened until the Public Service Commission of the Commonwealth of Pennsylvania shall determine, after ten (10) years from the completion of the improvements herein provided for, that public convenience so requires; but not more than one of said streets shall be opened in any one year. And not any of said streets shall be opened across the tracks of said company at a common grade therewith, but upon the same basis or apportionment of expense as is provided herein for the separation of the grades at Parade street, shall be carried under the tracks of the parties, in substantially the same manner."

Fifth: That by ordinance bill number four thousand one hundred eight, approved December sixteenth, one thousand nine hundred and fifteen, the City of Erie provided for the issue of bonds to the amount of four hundred seventy-five thousand ($475,000.00) dollars; fifty thousand ($50,000.00) dollars to pay current indebtedness, one hundred thousand ($100,000.00) dollars to defray a portion of the city's share of the expense of the elimination of grade crossings under the contract above referred to and three hundred twenty-five thousand ($325,000.00) dollars to apply on the cost of what is known as the Mill Creek improvement, but said city, by ordinance bill number four thousand one hundred twenty-nine, repealed that part of said ordinance number four thousand one hundred eight which provided for the

issue of bonds in the sum of three hundred twenty-five thousand ($325,000.00) dollars to apply on the cost of said Mill Creek improvement.

Sixth: That the City of Erie on December fifteenth, one thousand nine hundred fifteen, received bids for the sale of one hundred fifty thousand ($150,000.00) dollars of said bonds to pay the said current indebtedness and to defray a portion of the city's share of the expense of eliminating grade crossings which bids were duly received and one thereof accepted by the city, and delivery of said bonds awaits the decision of the court in this proceeding.

Seventh: That said contract entered into was submitted to the Public Service Commission of the Commonwealth of Pennsylvania, which commission December 14, 1915, after investigation and hearing, by its report and order made and entered, found and determined that the granting of said application is necessary and proper for the service, accommodation, convenience and safety of the public and issued its certificate accordingly.

Eighth: A plan was submitted to the corporate authorities of the City of Erie by which the grade crossings could be eliminated without closing any of the streets in question except Myrtle street, but said plan was not accepted or adopted by them.

### LEGAL CONCLUSION.

1. The corporate authorities of the City of Erie have the power to close the streets in question for the purpose of eliminating the grade crossings by virtue of the authority vested in them by the acts of assembly in relation to third class cities.

2. The corporate authorities of the City of Erie, in the exercise of the right of eminent domain, vested in them by the laws of the Commonwealth, have a right to close the streets in question for the public good and

safety of the people and are the sole judges of the expediency of such closing.

3. The corporate authorities of the City of Erie have a right to close the streets in question by virtue of the police power of the State vested in them by Constitution and laws of the Commonwealth for the protection of the people.

4. The passage of Ordinance Bill No. 4100 by the council of the City of Erie authorizing the execution of a contract with the railroads in question for the abolition of grade crossings was a valid exercise of the power vested in the said corporate authorities of the City of Erie by the Constitution and laws of the Commonwealth.

5. That the bonds amounting to $100,000.00 issued by virtue of Ordinance Bill No. 4108 amended by Ordinance Bill No. 4129, passed by the council of the City of Erie to defray the said city's portion of the cost of eliminating grade crossings, known as "Grade Crossing Elimination Bonds," are valid obligations of the City of Erie.

6. The action of the corporate authorities of the City of Erie for the abolition of grade crossings being a lawful exercise of the powers vested in them by the Constitution and laws of the Commonwealth, having been approved by the Public Service Commission according to law, the prayer for an injunction must be refused and the plaintiff's bill dismissed at his cost.

### DISCUSSION.

It appears from the facts found that the City of Erie is a city of the third class and was laid out in three equal parts about the year eighteen hundred and two by commissioners appointed by the governor of the Commonwealth of Pennsylvania under the provisions of the act of assembly of April 18, 1795, 3 Sm. L. 233, in inlots and outlots; the southern line of inlots being what is known as Twelfth street, and the southern line of the outlots being what is known as Twenty-sixth street; between

each row of inlots and outlots streets were laid out from the southern bank of Lake Erie to Twenty-sixth street, which streets were crossed at right angles by numbered streets, the streets running north and south being designated by name.

The act of assembly provides that said highways shall remain open as common highways of the Commonwealth forever, and since that time, the same with the exception of the streets in the third section, and several other streets in the first and second sections are now open and used as common highways of the city and the Commonwealth.

By the Act of April 8, 1833, P. L. 243, the Commonwealth conveyed the entire third section to the City of Erie and vacated all of the streets therein equal in number and length to about one-third of the entire street area of the city. The inlots and outlots in the first and second sections were sold by the Commonwealth and the purchase-money thereof was paid by the purchasers as appears by the records in the recorder's office of Erie County, Pennsylvania. The third section was sold by the City of Erie as acreage and all of the streets therein discontinued and the land generally used for agricultural purposes.

Until 1848 the southern line of the town or Borough of Erie was Twelfth street, the southern line of the inlots. The land covered by the outlots until 1848 was a part of Millcreek Township, Erie County, Pennsylvania, and had no connection with the Borough of Erie.

By the Act of April 10, 1848, P. L. 429, the boundaries of the Borough (now City) of Erie were extended so as to include the territory in question, not including Plum street, together with all the streets, lanes, public squares, and public grounds, included within the limits and territory thus added and annexed; and the jurisdiction of the corporate authorities and other affairs of said borough is hereby extended to the limits aforesaid. By the Act of February 25, 1870, P. L. 242, the boundaries of

the City of Erie were enlarged so as to include Plum street.

Up to the present time all of the streets running from the lake southward to Twenty-sixth street, in the first and second sections of the City of Erie, cross railroad tracks which were constructed subsequent to the laying out of the City of Erie over and upon said outlots at grade excepting at Ash street, State street, French street, and Liberty street, where the railroads cross over subways, and Wayne street which was closed under a contract with the railroads when a subway at Ash street was constructed.

By the 20th Section of the Act of May 23, 1874, P. L. 238, the mayor and councils of the cities of the third class are empowered to enact ordinances for the following purposes:—

"Clause 38—To open, widen, or otherwise improve or vacate any street, avenue, alley, or lane, within the limits of the city and also to create, open, and improve any new street, avenue, alley or lane."

"Clause 39—To create, open, widen, or extend any street, avenue, lane, or alley, or annul, vacate or discontinue the same whenever deemed expedient for the public good."

And by the Second Section of Article V, of the Act of May 23, 1889, P. L. 277, amended by Section Seven of the Act of May 16, 1901, P. L. 224, cities of the third class are empowered to enact ordinances for the following purposes:

"Clause 8—To lay out, open, widen, straighten, alter, extend, improve, establish, or re-establish grades of and keep in good order and repair and in safe, passable condition, any street, avenue, alley or lane, or any part thereof within the city limits or to vacate and discontinue the same whenever deemed expedient for the public good."

And this clause was re-enacted in Clause 8 of Section 3, of Article V, of the Act of June 27, 1913, P. L. 568.

In pursuance of the authority granted them by the acts of assembly above recited on the 30th of September, 1915, the mayor and council enacted an Ordinance Bill No. 4100, authorizing the execution of a contract by the City of Erie with the New York Central Railroad Company, the Pennsylvania Company, operating the Erie and Pittsburgh Railroad Company, and the Pennsylvania Railroad Company for the abolition of grade crossings within the City of Erie between the west line of Ash street upon the east and east line of Cascade street upon the west and for other purposes.

In pursuance of the provisions of said ordinance the City of Erie by its corporate officers entered into a contract with the railroad companies above referred to, providing inter alia for the closing of Holland, German, Myrtle, Walnut, Poplar and Plum streets at the intersections of said streets with the crossings of the railroads above referred to for a period of ten years at the joint expense of the City of Erie and said railroad companies.

The City of Erie by Ordinance Bill No. 4108, approved December 16, 1915, provided inter alia for the issue of bonds to the amount of $100,000.00 to defray a portion of the city's share of the expense of the elimination of grade crossings under the contract with the railroad companies above referred to; and the city has received bids for the sale of the said bonds, with other bonds, and one bid accepted by the city, and delivery of said bonds awaits the decision of the court in this proceeding.

The contract in question was submitted to the Public Service Commission, which commission December 14, 1915, issued a certificate of public convenience, approving the said contract and finding that it is necessary and proper for the service, accommodation, convenience and safety of the public.

The plaintiff alleges that the vacation of streets by virtue of said ordinance is absolutely null and void and that the said contract must be held to be totally void as

the carrying out the same is contingent upon the closing of the said streets.

It must be admitted that the legislature has, by the acts of assembly above mentioned, given the corporate authorities of cities of the third class, of which the City of Erie is one, the authority to create, open, or extend any street, avenue, lane or alley, or annul, vacate the same whenever deemed expedient for the public good.

Unless this legislation is prohibited by the Constitution, it must be conceded that the corporate authorities of the City of Erie had authority to close the streets in question, and that the ordinance enacted for that purpose is a valid exercise of that authority. It has been held that the power of the legislature to vacate streets and highways, or to invest municipal corporations with this power is not restricted by the Constitution of this Commonwealth: McGee's App., 114 Pa. 470; Paul v. Carver, 24 Pa. 207.

In delivering the opinion of the court (McGee's App., 114 Pa. 470), on page 476, Mr. Justice CLARK said: "In the absence of any constitutional restriction the power of the legislature to vacate streets and highways, or to invest municipal corporations with this power, cannot be doubted: Dillon Mun. Corp. 666. In Pennsylvania, a highway is the property of the people not of a particular district, but of the whole State; who, constituting as they do the legitimate sovereign, may dispose of it by their representatives and at their pleasure": Philadelphia & Trenton R. R. Co.'s Case, 6 Wharton 25.

In 2 Dillon on Municipal Corporations, 4th Edition, Section 666, it is said: "The plenary power of the legislature over streets and highways is such that it may, in the absence of special constitutional restriction, vacate or discontinue the public easement in them, or invest municipal corporations with this authority. Without a judicial determination, a municipal corporation, under the authority conferred in its charter 'to locate and establish streets and alleys, and vacate the same,' may con-

stitutionally order the vacation of a street and this power, when exercised with due regard to individual rights, will not be restrained at the instance of a property owner claiming that he is interested in keeping open the streets dedicated to the public."

It is worthy of note that there is no allegation in this bill that any individual right of the plaintiff is in jeopardy but he claims he is interested only as a taxpayer in keeping open the streets dedicated to the public.

There does not seem to be any doubt but that the corporate authorities of the City of Erie had the power to close the streets in question whenever they deemed it expedient for the public good. We think it cannot be successfully denied that the abolition of dangerous grade crossings is for the public good, and that the corporate authorities of the city are the sole judges as to the expediency of the abolition of such crossings.

It is said by Mr. Justice CLARK in McGee's App., 114 Pa. 470, 477:

"Whether or not the ordinance of the councils was a wise and prudent measure we are not called on to consider; its avowed, and doubtless real purpose was to subserve the public interest; it may, however, have originated in a mistaken policy; it may have conferred a benefit upon one to the incidental injury of others. But the functions of civil government must be trusted to somebody, and the results of its injudicious exercise must be borne without complaint."

And the action of the corporate authorities in this matter has been approved by the Public Service Commission of Pennsylvania who by a Certificate of Public Convenience have declared that the abolition of such crossings was necessary for the public safety and welfare and have made an order requiring the abolition of the crossings in accordance with the plans and specifications agreed upon.

This order was made by virtue of the provisions of the Act of July 26, 1913, P. L. 1374, known as the "Public

Service Company Law," which in Section 12 of Article V has the power: "to order any crossing now existing or hereafter constructed at grade or at the same or different levels, to be relocated or altered, or to be abolished."

The plaintiff contends that the streets in question were laid out and opened and dedicated by the Commonwealth as public highways in the Township of Millcreek long before the City of Erie had any jurisdiction or control over them. That the sale of the lots abutting these streets and common highways was irrevocably a dedication of the streets between the inlots and outlots to public use, and especially to the use and benefit of the purchasers of the inlots and outlots and their vendees. That the sale of an inlot or an outlot by the Commonwealth to an individual is an implied covenant and contract that the streets laid out in the plot shall forever be and remain public highways, being a contract as if it were between private parties and is protected by that clause of the Constitution of the United States and of the Commonwealth which provides that neither congress nor a legislature shall pass any act in violation of contracts. If this contention is correct then the City of Erie is powerless to vacate any of the original streets of the city between the inlots and outlots as laid out by the acts of assembly.

We cannot agree with this contention. It is no doubt true that the owner of real estate cannot be deprived of an easement secured by contract, as is shown by numerous authorities, some of which have been cited by the learned counsel for the plaintiff in this case. We have not been referred to any case, and we know of none, where it has been decided that the corporate authorities of a city of the third class have not the power to annul, vacate or discontinue a street laid out, opened and dedicated by the Commonwealth whenever they deem it expedient for the public good.

It is said in Elliott on Roads and Streets (1st Ed.), page 664:

"Whether it is expedient to discontinue a highway is a question for legislative decision, and when the authority to discontinue is delegated to local officers, and no restrictions are placed upon its exercise, the officers are invested with a very broad discretion, and unless this discretion has been abused the courts cannot interfere. This is in accordance with the general rule that where officers are invested with discretionary power courts will not substitute their judgment for that of the officers invested by law with the right to decide upon the necessity or expediency of doing a designated act."

The learned counsel for the plaintiff to sustain his contention has cited O'Donnell v. Pittsburgh, 234 Pa. 401. In that case it appears that Allegheny street in the City of Pittsburgh was not a public highway, but was part of a plot or plan laid out by a man by the name of Bayard and never became a public highway.

Mr. Justice Mestrezat in delivering the opinion of the court on page 413, says:

"Under these circumstances, a city ordinance depriving a lot owner of his easement over the streets in the plan—a property right secured by contract—without compensation would offend both the federal and state Constitution, and be void."

To the same effect is O'Donnell v. Porter Co., 238 Pa. 495.

The case of Commonwealth v. McNaugher, et al., 131 Pa. 55, was a prosecution for the obstruction of a highway and does not seem to have any bearing on the question at issue in this case, nor do the other cases cited by the learned counsel for the plaintiff in his brief.

It would seem that even if the title to the streets in question was in the plaintiff, his right therein would be subordinate to the right of eminent domain in the Commonwealth which has been delegated to cities of the third class and the corporate authorities have a right to appropriate the streets in question for the public good.

"The right to take private property for public use is

asserted under the power of eminent domain. Such power is an attribute of sovereignty. From the very nature of society and organized government it must belong to the state. It exists independent of constitutional mandate, and it existed prior to constitutions": Lazarus v. Morris, 212 Pa. 128, 130.

"The power to vacate and close public streets is as necessary for the public good as the power to establish them, in order that the public may be relieved from the expense of maintaining useless streets and highways and from liability for their nonrepair or defective condition, and in order also that, though the ways are not useless, the space occupied by them may be devoted to more pressing public needs, or that improvements for the public safety and welfare may be carried out": Vol. I (Third Edition) Lewis, on Eminent Domain, page 363, Section 196.

It is contended on behalf of the defendant that the corporate authorities of the City of Erie have the right to close these streets to eliminate grade crossings in the exercise of the police power of the State.

"The police power of the State is difficult of definition, but it has been held by the courts to be the right to prescribe regulations for the good order, peace, health, protection, comfort, convenience and morals of the community, which does not encroach on a like power vested in congress or state legislatures by the federal Constitution, or does not violate the provision of the organic law": Commonwealth v. Beatty, 15 Pa. Superior Ct. 5, 15.

"Grade crossings are a legitimate subject for control by the police power of the State": Penna. R. R. Co. v. Braddock Elect. Ry. Co., 152 Pa. 116; Perry County R. R. Extension Co. v. Newport & Sherman's Val. R. R. Co., 150 Pa. 193.

"A statute providing for the removal of grade crossings is a proper exercise of the police power and does not offend Section 10, of Article I, of the Constitution of the

United States": New York & New England R. R. Co. v. Bristol, 151 U. S. 556.

"And in the same manner, the taking of corporate property or franchises under the right of eminent domain does not offend Section 17, of Article I, of the Constitution of Pennsylvania": In re Opening of Twenty-second Street, 102 Pa. 108.

"Grants of franchises are made and accepted in subordination to the police power of the State": Penna. R. R. Co., Lessee of the Philadelphia & Erie R. R., v. Warren St. Ry. Co., 188 Pa. 74.

In our opinion the corporate authorities of the City of Erie had the right to close the streets in question by virtue of the power granted them in the acts of assembly and also by the police power of the State for the public good, and the plaintiff's bill must be dismissed at his cost.

The lower court dismissed the bill. Plaintiff appealed.

*Error assigned,* among others, was the decree of the court.

*Charles P. Hewes,* with him *M. Levant Davis* and *Charles Brevillier,* for appellant.

*H. Bedford Duff,* with him *Charles H. English,* for appellee.

Per Curiam, May 15, 1916:

This decree is affirmed, with costs to the appellees, on the opinion of the learned court below dismissing plaintiff's bill.