ESTHER JABLOWSKY, Respondent, *v.* STATE OF NEW YORK, Appellant. (Claim No. 25297.)

Third Department, November 10, 1943.

*Nathaniel L. Goldstein, Attorney-General (Orrin G. Judd, Solicitor-General; Gerald J. Carey, Assistant Attorney-General,* of counsel), for appellant.

*Edward J. Ledogar,* attorney for respondent.

*Louis J. Carruthers,* attorney for Long Island Railroad Co.

*Robert H. Schaffer, Acting Corporation Counsel,* for city of New York.

SCHENCK, J. Claimant is the owner of a parcel of land located at the intersection of Trotting Course Lane, a public street, and the Rockaway Beach Division of the Long Island Railroad in the borough of Queens, city of New York. The railroad tracks abutting claimant's property crossed Trotting Course Lane at grade and claimant's premises, which had been improved by the erection thereon of a gasoline station, was accessible from the north by way of Trotting Course Lane across the railroad company's tracks and from the south over the same thoroughfare. Pursuant to the provisions of chapter 677 of the Laws of 1928, known as the New York City Grade Crossing Elimination Act, the State Transit Commission ordered this grade crossing eliminated. The original plan provided for the carrying of Trotting Course Lane over the railroad by means of an overhead crossing. However, prior to the commencement of the work the Board of Estimate and Apportionment of the City of New York on May 5, 1933, adopted a general street plan pursuant to the provisions of the New York City Charter. This plan called for the closing of some existing streets and construction of a number of new thoroughfares, including a new parkway designated as Woodhaven Boulevard to be located a short distance to the west of. Trotting Course Lane, and provided that the latter street was to end at the railroad tracks. Thereafter, at the request of the city, the Transit Commission rescinded its plan of elimination by an overhead crossing at Trotting Course Lane and adopted a new plan whereby the originally proposed overhead crossing was constructed at the railroad intersection of the new Woodhaven Boulevard, and the grade crossing at Trotting Course Lane was closed by a wire fence on each side of the railroad right of way. The carrying out of this plan destroyed direct access to the claimant's property from the north, although it continued to be accessible from the south, and by means of streets connecting with other highways leading north and south the crossing of the railroad tracks in both directions at other points

could be accomplished. No part of claimant's property was appropriated for the purpose of this crossing elimination, nor was there any change of grade of Trotting Course Lane.

The court below found that the value of claimant's premises before the erection of the fence across Trotting Course Lane and the closing of the street to the north was $11,000 and that after the street closing, $5,000, and consequently made an award of $6,000 and interest. It also found that notwithstanding the erection of the wire fence Trotting Course Lane in front of claimant's property continued to be used as a street providing access from the south and that egress to the north of claimant's property could be obtained by driving south on Trotting Course Lane, thence turning north on Woodhaven Boulevard. The learned Trial Judge in his opinion points out that while under the common law no remedy is afforded for damages arising out of a public improvement beyond the boundaries of the premises involved whereby an owner of land is deprived of a means of access thereto, previously available, as long as some means of access thereto remains, there are two exceptions to the rule of nonliability: (1) the ancient street doctrine, (2) a remedy supplied by statute.

As found by the court below, the ancient street doctrine is not applicable here in that such doctrine is not based upon the fact that streets have existed for a long period of time (*Dwornik* v. *State of New York,* 251 App. Div. 675, affd. 283 N. Y. 597) and that in order to recover claimant must rely upon the statutes relating to crossing elimination. The award herein was predicated upon what the court held to be a statutory remedy.

We think the situation here is substantially the same as found in *Dwornik* v. *State of New York (supra)*. There, it was held that claimants owning property situated at a street corner in the city of Buffalo were not entitled to damages caused by a grade crossing elimination, where none of their property was taken, where there was no change of street grade in front of their premises and they were not cut off from all means of ingress and egress. In reversing the judgment of the Court of Claims, the court said: "None of their property was taken, there was no change of grade in either street in front of their property and they were not cut off from all means of ingress and egress. Under these circumstances there is no statutory provision which creates any liability to claimants for their damage, if any damage there be. And, of course, there is no common-law liability."

In *Miller* v. *State of New York,* 229 App. Div. 423, this court said: "And section 6 thereof provides, in case the elimination

causes damage to property not acquired, that the State shall be liable for it in the first instance, but that the provision shall not be deemed to create any liability not already existing in law.

" The provision conferred jurisdiction upon the court to award legal damages for lands taken and such damages for lands not taken as theretofore might have been awarded under existing law. No new rights were given and the common-law rule was not changed. Under that rule, it is settled law that the owner of property abutting upon a highway which is graded or changed by the public authorities has no right of action, unless it is given by some express statute. (*Smith* v. *Boston & Albany R. R. Co.*, 181 N. Y. 132, 136, 141; *Matter of Grade Crossing Commissioners*, 201 id. 32, 37; *McCabe* v. *City of New York*, 213 id. 468, 477; *Smith* v. *City of Boston*, 7 Cush. 254; *Coster* v. *Mayor of Albany*, 43 N. Y. 399, 414, 418; *Fearing* v. *Irwin*, 55 id. 486, 490; *Matter of Railroad Crossings*, 226 App. Div. 255, 257; 2 Cooley Const. Lim. [8th ed.] pp. 1155–1159.)

" The work was done by public authority for public benefit. The land abuts on the old road as it did before and no land was taken. While the road was closed at the crossing, a new way was built from a point on the old one, northwesterly of the house, but connecting with the old one at a point easterly of the old crossing, with the result only that claimants now are obliged to travel farther when they go to their leased farm. And they are inconvenienced by the discontinuance of the deliveries formerly made. Within the authorities, the damage is *damnum absque injuria* and the statute does not permit a recovery therefor." The language of section 6 of chapter 678 of the Laws of 1928, on which the decision in the *Miller* case is based, is identical with section 7 of chapter 677 of the Laws of 1928.

The court below cites the case of *Mirro* v. *State of New York* (172 Misc. 963, affd. 260 App. Div. 525, affd. 285 N. Y. 678)· as authority for the award to claimant. In that case liability was predicated on a provision of the Greater New York Charter (L. 1901, ch. 466) which permitted a recovery for the change of grade of a street. Here, there has been no change of grade and unless all access was destroyed by this street closing there is no liability. In the *Mirro* case the State had assumed the liability imposed upon the city of New York by its charter, which specifically permitted a recovery for change of grade.

A municipality may discontinue a street when it is done in the manner prescribed by law and when there is left to the private citizen other and suitable means of access (*Egerer* v. *N. Y. C. & H. R. R. R. Co.*, 130 N. Y. 108) even though such access

may not be quite so convenient as it would be if the street were allowed to remain open. (*Reis* v. *City of New York*, 188 N. Y. 58.) It is apparent, therefore, that section 442 of the Greater New York Charter, under which the Board of Estimate and Apportionment acted, afforded claimant no remedy.

Nor can claimant recover pursuant to the provisions of chapter 1006 of the Laws of 1895, which was an act to provide for the discontinuing and closing of streets, roads and highways in cities of more than 1,250,000 inhabitants, and referred to in the opinion of the court below, for that act provides for the closing of both ends and the actual discontinuance of the thoroughfare for street purposes. Trotting Course Lane, which abuts claimant's property, is still open to traffic. By the elimination of the crossing it did not "cease to be or remain, for any purpose whatever a street" (L. 1895, ch. 1006, § 2, renum. and amd. by L. 1923, ch. 752) but continued to remain a public street subject to public easements. The city did not acquire title to the lands over which Trotting Course Lane passed, there was no complete street closing and accordingly, no award may be made. (*Matter of the City of New York* [*West 151st St.*], 149 App. Div. 55.) The question there presented was whether by virtue of the provisions of section 6 of chapter 1006 of the Laws of 1895 the Commissioners had jurisdiction to award damages to appellant. The street was completely closed and the claimant left without present access or the prospect of access in the immediate future. The court said, at page 66: "Ordinarily the right to damages under the statute in question, and under similar statutes, depends upon the claimant being an abutting owner on the part of the street discontinued, but the language of the statute is very broad and may, I think, be reasonably construed to embrace the claim of the appellant Higgins. If the property in question had other means of access, then, not being an abutting owner on the street discontinued, he would have no standing in this proceeding, * * *."

I cannot find that claimant is afforded any relief for inconvenience or depreciation in the value of her property caused by the erection of the barricade at the railroad tracks either on the theory of the ancient street doctrine or by virtue of any statute.

The judgment of the Court of Claims should be reversed and the claim dismissed.

All concur.

Judgment reversed and claim dismissed, without costs.