## City Of Falmouth v. Pendleton County Court et al.

November 16, 1948.

H. B. Best for appellant.

W. Marvin Davis for appellees.

OPINION OF THE COURT BY JUDGE CAMMACK—Reversing.

This appeal is from a judgment holding that cities of the fifth class do not have authority to install parking meters. In urging reversal of the judgment, Falmouth, a city of the fifth class, insists that, even though there is no specific statute granting cities of its class exclusive control of their streets, its general powers are broad enough to authorize the installation of parking meters.

The installation of parking meters in a city of the first class was upheld by this Court in City of Louis-

ville v. Louisville Automobile Club, 290 Ky. 241, 160 S. W. 2d 663. The powers of the city referred to in that opinion may now be found in KRS 83.010 and KRS 93.050. The former section refers to the city's general powers, while the latter provides that the department of public works shall have exclusive control of the construction and use of all public ways. KRS 94.740 specifically provides for the installation of parking meters in cities of the second class. This Court approved the installation of parking meters in the fourth class cities of Mayfield and Russell. See Graves County v. City of Mayfield, 305 Ky. 374, 204 S. W. 2d 369; Stephens v. City of Russell, 306 Ky. 727, 209 S. W. 2d 81. In the Mayfield case the statute relied upon was KRS 94.360, which provides that cities of the third and fourth classes shall have exclusive control of their public ways. The opinion in the Russell case followed that in the Mayfield case.

Reference to the case of Commonwealth v. Nolan, 189 Ky. 34, 224 S. W. 506, 11 A. L. R. 202, shows that the legislative authorization just mentioned was cited in upholding an ordinance establishing one-way traffic on a street in Harlan, a city of the fourth class.

KRS 87.070 contains the grant of general powers to a city of the fifth class. This section follows:

"The city council may pass ordinances not in conflict with the Constitution or laws of this state or of the United States. It may do and perform all acts and things necessary and proper to carry out the provisions of the laws relating to cities of the fifth class, and may enact and enforce, within the city limits, all local, police, sanitary and other regulations that do not conflict with general laws. It may, by ordinances consistent with law, prescribe additional duties for city officers."

In the case of Commonwealth v. Illinois Central Railroad Company, 138 Ky. 749, 129 S. W. 96, 97, the Court had before it the question of whether a city of the fifth class, under its general powers (then Carroll's Kentucky Statutes 1909, section 3637), had the authority to close a city street and authorize the construction of a railroad bed over it. In that case it was said:

"* * * In the laws enacted for the government of cities of the fifth class, we do not find that the Legisla-

ture has specifically given to the council the right or power to open, close, or alter streets as it has done in regard to cities of some other classes. Still the city is an arm or branch of the state government, and authority must rest somewhere for the opening, closing, or altering of streets. Certain it is that the Legislature did not intend that cities of the fifth class should be without power to make such changes in their streets as the necessity of the occasion from time to time required. In the absence of any special authority delegated to the city in its charter, the general laws enacted for the government of cities of the fifth class must be looked to. In subsection 7 of section 3637, defining the powers of the city council, we find that the council is empowered 'to do and perform any and all acts and things necessary and proper to carry out the provisions of this chapter, and to enact and enforce, within the limits of such city, all other local, police, sanitary, and other regulations as do not conflict with general laws.' This provision is certainly broad enough to enable the city council to pass any ordinance that is necessary for the public good, so long as it is not in conflict with the general laws. The city authorities have control over the streets of the city, and neither the state nor county authorities can interfere with the city government in the management of its streets. The council are the judges of the necessities and wants of the city. The members thereof are elected by the inhabitants of the city, and it is presumed that they will act for its best interests. Their conclusions and acts, so long as within the scope of their authority, are not open to question. * * *''

In the case of Leitchfield Mercantile Co. v. Commonwealth, 143 Ky. 162, 136 S. W. 639, the Court, in commenting upon the powers of a city of the fifth class, said that any city has control of its streets.

It is our view that a city of the fifth class has authority under its general powers to install parking meters. The installation of parking meters does not conflict with any general law and we believe that the wording of KRS 87.070 is broad enough to warrant their installation. As said in the Illinois Central Railroad case, the authorities of a city of the fifth class have control over its streets and they are the judges of the necessities and wants of the city. Furthermore, we think our reasoning in the

cases relating to the installation of parking meters in cities of the first and fourth classes supports the conclusion reached in the case at bar.

For the reasons given we think the judgment should be and it is reversed, with directions to set it aside and for the entry of a judgment consistent with this opinion.