Carl O. HEDRICK and Corine May Hedrick, Plaintiffs in Error,

v.

J. A. PADON, Don M. Mattocks and A. J. Murphy, as Trustees of Warren Employee Pension Trust, Defendants in Error.

Carl O. HEDRICK and Corine May Hedrick, Plaintiffs in Error,

v.

CITY OF TULSA, et al., Defendants in Error,

J. A. Padon, Don M. Mattocks and A. J. Murphy, as Trustees of Warren Employee Pension Trust, Intervenors.

CITY OF TULSA, Oklahoma, Plaintiffs in Error,

v.

Carl O. HEDRICK and Corine May Hedrick, et al., Defendants in Error.

No. 37568.

Supreme Court of Oklahoma.

Sept. 16, 1958.

As Amended Sept. 30, 1958.

Rehearings Denied Dec. 16, 1958.

Applications for Leave to File Second Petition for Rehearing Denied Jan. 6, 1959.

enjoin the defendants, J. A. Padon, Don M. Mattocks and A. J. Murphy as Trustees of Warren Employee Pension Trust, from blocking or obstructing a part of a certain alley in the City of Tulsa, Oklahoma. In the next one, the same plaintiffs sought to enjoin the defendants, The City of Tulsa, John P. Thomas, John W. Henderson, Sid Peterson and C. B. Clothier as Commissioners of the City of Tulsa, L. C. Clark, as Mayor of the City of Tulsa, and Elizabeth Stowell Anderson, as city auditor, from enacting any ordinance vacating that part of the alley involved in the former action. The other case was in the nature of condemnation brought by the City of Tulsa, as plaintiff, against Carl O. Hedrick, Corine Hedrick, L. M. Laravea and Isabel Laravea for determination of the damage which would result from the vacation of the affected portion of the alley. The Hedricks will be referred to as plaintiffs, the Trustees, as defendants and the City of Tulsa as "City."

The alley runs north and south through the center of the block, separating it into the east half and the west half. The defendants owned the south 120 feet of each half and between them was the 16 foot alley in question. The defendants had contracted for, and had begun construction of a ten story office building on their east tract and a cafeteria on their west tract with a connecting structure in the alley between the two buildings.

The plaintiffs owned the lot immediately north of, and adjacent to the west tract or "cafeteria" site. The lot faced west and ran back east to the alley. On the front was a large frame residential building. At the back, on the alley, was a frame garage apartment building with access thereto through the alley here involved.

On October 11, 1955, the defendants wrote the following letter to the mayor and city commissioners of said city:

"Gentlemen:

"We attach hereto as Exhibit, 'A' a plat showing Block 6, Friend Addition, and Block 4, Horner Addition to the

Samuel A. Boorstin, Tulsa, for plaintiffs in error.

Darven L. Brown, City Atty., Tulsa, for the City of Tulsa.

Harry M. Crowe, Jr., Tulsa, Warren M. Sparks, O. Gordon Oldham, T. M. Anderson, Tulsa, for trustees.

DAVISON, Justice.

This appeal was taken from a judgment rendered upon the trial of three cases which had theretofore been consolidated. In the first one, the plaintiffs, Carl O. Hedrick and Corine May Hedrick, sought to

City of Tulsa, constituting the block lying between 13th and 14th, streets and between Cheyenne and Boulder Avenues in the City of Tulsa. J. A. Padon, A. J. Murphy and Don M. Mattocks, as Trustees of the Warren Employee Pension Trust, are the owners of Lots 2, 3, 5, and 5 in Block 6 of the Friend Addition, and Lots 4, 5 and 6 in Block 4, of Horner Addition as outlined on the plat, and plan to construct a substantial office building on Lots 5 and 6, Block 6 of Friend Addition, and Lots 5 and 6 Block 4 of Horner addition. For this Purpose, said Trustees do hereby apply for an order vacating that portion of the 16 foot alleyway lying between the lots on which it is proposed to construct said building, this portion of the 16 foot alleyway lying between the lots on which it is proposed to construct said building, this portion of the alley having a length North and South of 120 feet and being shown in red on the attached plat. It is understood that for utility purposes the City will need an accessway from the alley which would permit vehicles to turn out of the alley. The Trustees, therefore, offer to grant to the City an easement 10 feet in width off the entire South side of lot 3 of Friend Addition with the stipulation that such time as the entire alley may become vacated, such easement granted by said Trustees shall cease to exist.

"As construction plans cannot be completed until Your Honors have acted on this application, your early attention hereto will be appreciated."

Pursuant to, and in compliance with, the above quoted application, the Mayor and board of Commissioners adopted a resolution on the 20th day of December, 1955, vacating that part of the alley in said block which separated the two tracts of land owned by the defendants. The resolution also directed the city attorney to bring such condemnation action as was required by 11 O.S.1951 sec. 659. These developments culminated in the actions which gave rise to this appeal. The judgments of the trial court were generally for the defendants. The plaintiffs appealed, founding their assertion of error upon four grounds or propositions. The first is that it was error to allow the parties we have denominated "defendants" to intervene in the action against the "city". The next is that it was error to consolidate the several actions. The other two alleged errors go to the substance of the litigation rather than to the method of procedure. One is that a municipality may not vacate a street or alley for a purely private purpose. The other is that the vacation of a public street or alley does not destroy the private easement which abutting property owners acquired in the street or alley by dedication and user.

We need not consider the procedural questions because the substantive ones are dispositive of the issues. The alley vacation proceedings were commenced by the filing, by defendants, of the above quoted letter or application. No conclusion can be reached therefrom other than that the vacation of the alley was sought for purely private purposes. The resolution of the city commissioners, which was passed pursuant thereto, discloses no public purpose that would be accomplished. The testimony in the record herein does not establish any public necessity or expediency warranting the closing of the alley.

In the case of Mitchener v. City Com'rs of City of Okmulgee, 100 Okl. 98, 228 P. 159, 164, it was, in effect held that a city has no authority to vacate a public street for a private purpose. It was therein said that,

"Section 573, Rev.L.1910 (act 1890), confers upon city authorities the power to 'open, straighten, widen or extend streets,' etc., and section 588, R.L.1910 (act 1890) confers upon them the power to 'vacate or discontinue any street, whenever necessary or expedient,' it therefore necessarily follows, that when the act of attempted vacation is attacked the necessity or ex-

pediency of the act must be made manifest, and in the absence thereof the city authorities are without power to vacate the street."

This court then quoted and adopted the following pronouncement from the case of Smith v. McDowell ex rel. Hail, 148 Ill. 51, 35 N.E. 141, 22 L.R.A. 393, to-wit:

"In this case there is no pretense that the public interest required the vacation of any part of the street, or that any public interest, local or general, would be subserved by the proposed vacation. The ordinance professedly and in terms, proposed to destroy the public right and use, for the sole purpose of enabling a private person to occupy a portion of the street with a permanent structure, appurtenant to his building abutting upon the street. This the municipal authorities are not empowered to do, and their action was ultra vires and void." To the same effect is the case of City of Stillwater v. Lovell, 159 Okl. 214, 15 P.2d 12.

The resolution and the evidence in the record herein are insufficient to meet the test of making the public necessity and expediency of the act manifest.

By reason of the location of their lot with reference to the involved part of the alley, the plaintiff had an interest in the alley, not only as a public way, but also as a right "peculiar to itself, in which the general public has no interest, and (which) exist in the nature of an incorporeal hereditament attached to said lots, and (which) is a valuable property right". Siegenthaler v. Newton, 174 Okl. 216, 50 P.2d 192, 199.

In the instant case, the defendants were not authorized to exercise the right of eminent domain regardless of the payment or non-payment of compensation. Simply stated, they could not destroy or appropriate plaintiffs' easement nor deprive them of their right of ingress and egress. Lindauer v. Hill, Okl., 262 P.2d 697.

The judgment is reversed and the cause remanded with directions to enter judgment not inconsistent with the views herein expressed.

CORN, V. C. J., and JOHNSON, BLACKBIRD and JACKSON, JJ., concur.

WELCH, C. J., and HALLEY, WILLIAMS and CARLILE, JJ., dissent.

HALLEY, Justice (dissenting).

Due to the fact that I think the majority opinion overlooks salient facts in this case and has made too narrow an application of the legal principles involved, I dissent to it.

The Warren Employee Pension Trust for which the defendants, J. A. Padon, Don M. Mattocks and A. J. Murphy are the trustees, is the owner of the entire block between Thirteenth and Fourteenth Streets and Boulder and Cheyenne Avenues in Tulsa except the lot owned by the plaintiffs. It is the owner of ninety-two per cent of the entire area of the block. The buildings that were being erected on the four south lots of the block have been completed. The office building and the cafeteria are now occupied and in use. The office building is rented to Warren Petroleum Corporation, a separate entity from the Trust Fund. The alley has been closed. The evidence in this case showed that over four hundred persons would cross the alley three times a day, back and forth, between the office building and the cafeteria. The number very likely now exceeds that. These persons are the employees of the Warren Petroleum Corporation and persons having business with that Company. As far as this situation is concerned they are the general public.

The evidence is undisputed that if the alley had been allowed to remain open and the public had walked across the alley at the ground level a serious traffic hazard would exist.

A new alley was created along the north side of plaintiffs' property which gave the plaintiffs an outlet to Cheyenne Avenue. Now the alley runs south from Thirteenth Street to a point one hundred and twenty

feet from the north edge of Fourteenth Street or to the south side of plaintiffs' property. At the north edge of said property it goes west on defendants' property to Cheyenne Avenue.

All of defendants' property except that occupied by the two buildings and the new alley is a parking lot.

As far as accessibility to the streets surrounding this block plaintiffs' property is in a more advantageous position than before.

At the outset it is my position that the matter of vacating alleys in the City of Tulsa is one of purely municipal concern and is controlled entirely by the City Charter Article II, Sec. 6, Par. 11. Although the Oklahoma Statutes are much the same, 11 O.S.1951 Sec. 656, the question is nevertheless controlled by the City Charter. See Constantine v. City of Sunnyvale, 91 Cal. App.2d 278, 204 P.2d 922.

The City of Tulsa is given the power under its Charter to vacate an alley which I set out: (Art. II, Sec. 6, Par. 11)

"The City shall have power to open, widen, extend or otherwise improve any street, avenue, alley; and to annul, vacate or to discontinue the same or to grant to any other public use when deemed necessary or expedient; provided that all damages sustained by citizens of the city or owners of property therein shall be ascertained by condemnation proceedings, such proceedings, shall be had in all respects as provided by law for the condemnation of property for municipal purposes in cities of the first class; and provided further, that whenever any street, avenue or alley shall be vacated, the same shall revert to the owners of real estate adjacent on each side in proportion to the frontage of said real estate, except in cases when such streets, avenues or alleys shall have been taken and appropriated to public use, in a different proportion, in which case it shall revert to adjacent lots of real estate in proportion as it was taken from them;

provided that when in the opinion of the Board of Commissioners of the City, that it is necessary to re-open such alleys that they may order such alley opened without any expenses to the City."

No where is it stated that an alley can only be vacated when it is exclusively for the public good. If it is for the public as well as the private good, an alley may be vacated. When the majority opinion states categorically that a city cannot vacate a public alley for the benefit of a private individual it takes too narrow a position. Although the majority says not, it was clearly established that the public would get more use from the land constituting the alley after it was vacated than before. Unchallenged is the statement that over four hundred employees of Warren Petroleum would use the now constructed passageway between the two buildings three times daily.

The City of Tulsa should and does have the right to vacate an alley that if allowed to remain open would create a traffic hazard. There are times that the rights of the individual must yield to that of the public good. This is one of them.

Captain Larry Coulson of the traffic department of the Tulsa Police Force in answer to questions about the situation of this alley remaining open made among some of his answers this statement:

"I think there would be a definite safety problem involved.", and "In my opinion there would certainly be a definite hazardous situation existing there for any foot traffic", and again "Certainly you have a very serious problem at any time you mix vehicular and pedestrian traffic."

This statement is made in Vol. 11 of McQuillin on Municipal Corporations, sec. 30.185, p. 119:

"* * * But under the general welfare clause, or the police power for the good and safety of the public, municipal power to close a dangerous street undoubtedly exists."

Cited in support of the foregoing are Commonwealth v. Illinois Cent. R. Co., 138 Ky. 749, 129 S.W. 96; Batson v. Southern Ry. Co., 106 S.C. 307, 91 S.E. 310 and Eichenlaub v. City of Erie, 254 Pa. 70, 98. A. 857.

Whatever rights the plaintiffs had to keep the alley open must yield to the right of the municipality to protect its citizens from traffic hazards and the plaintiffs were amply paid for their loss, if any, resultant from the closing of the alley.

In a case like this where provision has been made for adequate means of access to plaintiffs' property they cannot complain. In 64 C.J.S. Municipal Corporations § 1668, p. 38, this statement is made:

"It has been held that a city may discontinue a street if other suitable means of access to abutting land are left, even though such access is not as convenient as that afforded by the street to be vacated, and the statutes sometimes make the provision of another way a condition to the vacation of a street. * * *"

This is supported by Jablowsky v. State, 267 App.Div. 54, 44 N.Y.S.2d 549, affirmed in 292 N.Y. 652, 55 N.E.2d 517.

The Supreme Court of New Mexico has held in Mandell v. Board of Commissioners of Bernalillo County, 44 N.M. 109, 99 P. 2d 108, that mere inconvenience resulting from the closing of a street when another reasonable, although perhaps not equally accessible approach remains, does not give use to a legal right in one so inconvenienced. Courts do not look with favor on claims based on such grounds. It also held that travel by a more circuitous route was not a special injury, Blanding v. City of Las Vegas, 52 Nev. 52, 280 P. 644, 68 A.L.R. 1273.

The public welfare has been promoted by the vacation of the south one hundred and twenty feet of this alley. Very much in point on this question is People ex rel. Hill v. Eakin, 383 Ill. 383, 50 N.E.2d 474, 478, wherein this statement is made:

"* * * The public interest is served by its vacation when the city is relieved from the expense of maintaining an alley used only by a small portion of the public (People ex rel. Huempfner v. Benson, 294 Ill. 236, 128 N.E. 387) or when the city is freed from liability for injuries to the traveling public by reason of defects in an unimproved alley. People ex rel. Franchere v. City of Chicago, supra [321 Ill. 466, 152 N.E. 141]; People ex rel. Stern v. Elgin, Joliet & Eastern Railway Co., 298 Ill. 574, 132 N.E. 204."

The Eakin case further holds that relief of a city from difficulties of maintenance also constitutes public benefit inuring to the city.

The majority opinion cites five cases, four from Oklahoma and one from Illinois and not one of them is in point in this case. Mitchener v. City Com'rs of City of Okmulgee, 100 Okl. 98, 228 P. 159; Smith v. McDowell ex rel. Hail, 148 Ill. 51, 35 N.E. 141, 22 L.R.A. 393, and City of Stillwater v. Lovell, 159 Okl. 214, 15 P.2d 12, are all cases in which it was not shown that any public interest was involved. In the case at bar there was a sufficient showing of public interest by virtue of the elimination of a traffic hazard. The rule in Siegenthaler v. Newton, 174 Okl. 216, 50 P.2d 192, 198, which has to do with obstructions of a public highway is taken from McKay v. City of Enid, 26 Okl. 275, 109 P. 520, 30 L.R.A.,N.S., 1021, wherein was classified the circumstances under which the obstructions of a public highway would be considered as specially injurious to a private landowner. They are as follows:

"(1) Where the obstruction is in front of the abutting owner's property and interferes with his ingress and egress to and from his property; (2) where the obstruction, although not in front of the owner's property, is in such proximity to it, upon the highway upon which his property abuts, that the use and enjoyment of his property is destroyed or greatly interfered with, and its value depreciated; and (3) where the ingress and egress to and from the

owner's property has been interfered with by an obstruction not in the highway upon which such property abuts, but in a highway which is the only means of ingress and egress to and from the owner's property."

No one of these classifications fits the case at bar.

Lindauer v. Hill, Okl., 262 P.2d 697, the last case cited by plaintiffs is not binding because their right of ingress and egress to their property has not been destroyed nor was any special damage shown.

The majority fails to discuss one of the important rules on this question of vacating streets and alleys and that is: "That the discretion of the municipal authorities in vacating a street or alley will not be controlled or interfered with by the courts unless there is a plain case of abuse of discretion or there has been fraud or collusion." There is no evidence in this case of abuse of discretion or has any fraud or collusion been shown. Here the Mayor and Board of Commissioners were confronted with this problem: "A fine building was being added to Tulsa's Skyline and a cafeteria was being erected across the alley from the larger building. The travel from the large building to the cafeteria and back would create a traffic hazard." The commissioners in the exercise of good judgment thought the alley should be closed. This was done. Common sense dictated their action. There is no reason for the courts to intrude. The plaintiffs have not sustained the burden resting upon them of showing any bad judgment or wrong doing. This matter is discussed at some length in 64 C.J.S. Municipal Corporations § 1672 b, p. 48 and Vol. 11, McQuillin on Municipal Corporations, Section 30.186 at p. 128.

Let us look at this case from another practical viewpoint. If the short portion of the alley which is now closed should remain closed by affirming the trial court judgment there would be ample access to plaintiffs' lot, by a street across the front and by an alley along the north side and across the entire back of the lot. Thus any one who desires may enter plaintiffs' premises in the front by the street, and on the north side or the rear by the remaining alley ways and may leave plaintiffs' premises in the same way or ways.

If this short portion of the alley now closed should be opened under the majority opinion it would be solely for the benefit or the pretended benefit of the plaintiffs and persons desiring to enter the rear end of plaintiffs' lot from the south or to leave that way. No other person would have occasion to use it lengthwise at all. Still the large number of the general public would be required to cross it as above pointed out and with the great dangers above observed.

That would be creating a severe public hazard in order to provide merely a possible additional service for or to the plaintiffs which is wholly unnecessary since he and his lot are fully well served by ample means of entry and exit. This is well established and demonstrated, and indeed is not disputed—and cannot be disputed.

It is understandable that the majority could reach the conclusion of reversal when it is noted that the majority opinion is based on the cited Lindauer case, supra, and upon the rule that the city " * * * could not destroy or appropriate plaintiffs' easement nor deprive them of their right of ingress or egress."

All would agree to that rule, but applying it here is unsound because there is no depriving the plaintiffs of their right of ingress and egress. It is a serious question whether plaintiffs' right of ingress or egress is even impaired on the one hand, or whether on the other hand there is actual improvement in the available methods of ingress and egress to and from all parts of plaintiffs' lot.

Originally plaintiffs' lot was served by a street across the front end of the lot and an alley across the back end. Now it is served by the same street across the front, by a new alley extending across the north side of the lot and by the same alley across the back end of the plaintiffs' lot, the only difference being that now the alley ex-

tending across the back end of the lot is closed at the south end with only the north end opened. The rule of the Lindauer case is in no sense applicable.

The alley in question may be reopened any time in the future if the public interest required it.

To reverse the action of the City and the trial court of Tulsa County is not justified. I dissent.