### Tegtmier v. City of Covington.

(Decided February 18, 1919.)

Appeal from Kenton Circuit Court
(Criminal, Common Law and Equity Division).

Municipal Corporations—Construction of Streets—Closing to Travel.—A municipality has power and authority while constructing or reconstructing its streets, or any part thereof, to blockade and close the same to travel; and where such blockade is made by the erection of suitable barriers which, at night, are indicated by red signal lights in such way as to notify travelers, exercising reasonable care, that the street, or that part of it, is closed to

travel, the city is not liable to a pedestrian who is injured by falling into an excavation so barricaded.

ROBERT C. SIMMONS for appellant.

A. E. STRICKLETT and JOHN A. RICHMOND for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

This action was instituted in the Kenton circuit court by Lily Tegtmier to recover damages for personal injuries, incurred by a fall on Johnson street, in the city of Covington. The petition avers that the city, through a contractor, was reconstructing the street at the point where the injury occurred, and had excavated a ditch or hole several inches deep, which had been left unguarded and without signal or warning; and that appellee, while traveling along the street after dark, and exercising care for her own protection, stepped into the excavation, precipitating her fall which resulted in the injuries of which she complains. The answer denies that appellant was injured, or that the street had been excavated, or that any excavation had been left unguarded or without signal and warning. It also pleaded contributory negligence. The reply controverted the affirmative allegations of the answer. Upon a trial before a jury the verdict was for appellee city, and Miss Tegtmier prosecutes this appeal.

Appellee urges but one ground for reversal, and that is that the court erroneously gave an instruction offered by appellee in substance telling the jury to find for defendant city if it believed from the evidence that "there was signal lights, or a signal light, or barricade at the place plaintiff attempted to cross the street," which was of sufficient size and character to warn a person exercising ordinary care of the danger from the excavation. It is urged that there was no evidence upon which to base the instruction, and it is conceded that had there been evidence tending to show the existence of signal lights or barricades at the place the young lady was injured, this instruction would have been proper. Miss Tegtmier testified as follows; "Q. What did you notice there, if anything? A. Some bricks and things. Q. What was the bricks and things? A. It had been raining so hard and I knew nothing of the digging any gutter, and the water was flowing over, there was not any dirt or rocks or any-

thing that they had been digging there. . . . I said my foot felt like it was slipping; it felt like I went into something; I do not know what it was. I did not know about this digging. Q. You did not see any digging yourself? A. No, sir. Q. When you put your right foot down, you stepped on what you thought was the edge, rock, or whatever it was, and your foot gave way? A. Yes, sir. . . . Q. I understand you to say that your foot stepped into something. Mr. Schmitz asked you if your foot turned? A. No, my foot did not turn. I just stepped down and before I knew it I was on the ground. . . . Q. Please state whether or not there was any light of any kind to indicate the presence of this place? A. There was nothing there to indicate that they had been digging. Q. Where was the electric light? A. There was an arc light at the corner. Q. Was that burning? A. Yes, sir.''

The witness, Rosa Frendel, gave the following testimony; "Q. Were you out on the street that evening? A. Yes, sir, after the storm. Q. What sort of storm was it? A. Rain storm; heavy rain. Q. Did you see any light on this job? A. After the rain I went out in the yard and I noticed there was a light at the alley but none at Third and Johnson. Q. Where is the alley? A. Between Third and Fourth streets. Q. How far is it from the two streets? A. About four houses from Third. . . Q. And there was a light there? A. Yes, sir. Q. How was this earth there at Third and Johnson? A. They did not throw it out right at the spot where they dug it up. Q. How far was it away? A. Three or four feet. . . . . Q. You saw a light? A. Yes, sir, at the alley. Q. Where was it placed? A. Right on a pile of dirt. Q. Where? A. At the corner of the alley. Q. Where with reference to the street or sidewalk? A. Well, it was on a pile of dirt near the alley. Q. Was the dirt in the street? A. Yes, sir. Q. What kind of a lantern was it? A. It was a red light. Q. Was that the only one you saw? A. Yes, sir, that was the only one. Q. How far did the digging extend towards the alley at that time? A. All the way up.''

The witness, Fred Tegtmier, who examined the premises immediately after the accident, testified as follows: "Q. State what you saw with reference to lights, if anything? A. There was only one light right at the head of Stewart street; that was all the lights. . . . Q. Did you see the lantern there? A No, sir, no lantern there. Q.

Where did you see any lantern if you saw any? A. Right at the head of Stewart street.''

Then the witness, Remley, testified as follows: "Q. Was there any provision made, that is any lights placed there? A. The first night there was a light there and some pieces laid across, and the second night I do not know; Mr. Tegtmier asked me that. I did not pay any attention to the second night whether there was a signal there. Q. But the first night there was a light at the end of the rock near the brick pavement? A. Yes, sir. Q. Was it burning? A. Yes, sir. Q. And there was boxes arranged there to barricade the place? A. No, sir; as well as I remember there were pieces of timber laying across some rocks and the light on top. Q. The first night? A. Yes, sir. Q. What kind of light? A. A red signal light. Q. And noticed the lights around there of evenings and morning near your store? A. Yes, sir. Q. And you noticed the barricades there? A. No, sir. Q. Didn't you give Mr. Ramsey some boxes to make a barricade with? A. Probably I did; I do not remember it. Q. You noticed the lights the day they started? You did not notice them the second day, but you did notice them for quite a while after that? A. Yes, sir.''

A municipality has power and authority while building or rebuilding a street, or any part thereof, to blockade and close the same to travel; and where such blockade is made by the erection of suitable barriers, which are indicated at night by a signal light or lights, in or across the street in such way as to notify travelers that the street or that part of it is closed to travel, and to warn pedestrians, exercising 'ordinary care, that the street at that point is closed to travel, a traveler injured thereon, through defects in the street, is without remedy, and the city will not be held liable for damages. Knepfle v. Lauffer, 182 Ky. 514; Commonwealth v. I. C. R. Co., 138 Ky. 749; Barrickman v. City of Louisville, 167 S. W. 151.

If the excavation into which Miss Tegtmier slipped and fell, if she did slip and fall, was guarded and protected by barricades on which a red signal light or lights were at the time of the injury, and the barricades and lights were of such size and conspicuousness as to have warned a reasonably prudent person of the existence of the excavation, then she was not entitled to recover, and the instruction complained of was properly given. After

going through the record carefully we are left in doubt as to whether the evidence introduced by the plaintiff was sufficient to warrant an instruction on the subject. There is, however, some evidence tending to prove that the excavation was guarded by barriers and indicated by signal lights. This evidence, meager though it be, was perhaps sufficient to have warranted the trial court in giving instruction No. 2½, of which complaint is made. Under the facts of the case we are unable to say that the jury was misled to the prejudice of the appellant. We do not regard the giving of the instruction, when considered in connection with other instructions and the evidence, as prejudicial error.

Judgment affirmed.