THE AMERICAN ASPHALT PAVING COMPANY, Appellant, *vs.* THE CITY OF CHICAGO *et al.* Appellees.

*Opinion filed April 21, 1928—Rehearing denied June 8, 1928.*

1. MUNICIPAL CORPORATIONS—*legislature may give cities plenary power to vacate streets.* Subject to the limitations imposed by the constitution the legislature has plenary power to vacate or discontinue streets, and when this power is exercised by some subordinate body or agency to which it has been delegated by general law, it is, within the terms of the grant, the exercise of the power of the legislature.

2. SAME—*what constitutes public benefit from vacating street.* The elimination of frequent obstructions to heavy traffic due to switching cars and of the dangers ensuing therefrom, and the relief of the city from liability for accidents due to the maintenance of a switch-track in the vacated portion of a street, constitute a public benefit justifying the vacation.

3. STATUTES—*courts cannot inquire into expediency of statutes.* The propriety, wisdom and expediency of a legislative act is exclusively a legislative question, and courts are not authorized to declare a statute invalid because it may be unwise or detrimental to the best interests of the State, as the constitutionality of an act is determined solely by reference to the limits imposed by the constitution, and the only question for the court to decide is one of power—not of expediency.

APPEAL from the Superior Court of Cook county; the Hon. WALTER P. STEFFEN, Judge, presiding.

TOLMAN, SEXTON & CHANDLER, for appellant.

FRANCIS X. BUSCH, Corporation Counsel, FRANK T. HUENING, and CARL H. LUNDQUIST, for appellee the city of Chicago.

KNAPP & CAMPBELL, for appellee the American Car and Foundry Company.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

The American Asphalt Paving Company, a corporation, filed an amended bill of complaint in the superior court of Cook county against the city of Chicago, A. A. Sprague, commissioner of public works of the city, and the American Car and Foundry Company, a corporation, to enjoin the vacation of the west half of a portion of South Paulina street, in the city of Chicago, on the ground that the vacation was made solely to serve the purposes of the car and foundry company and was contrary to the public interest. Two answers were filed—one by the city and the commissioner of public works and the other by the car and foundry company. The complainant filed replications to these answers. Evidence was heard and a decree was rendered dismissing the amended bill for want of equity, at the complainant's costs. It was certified in the decree that the validity of a municipal ordinance was involved and that the public interest required that the appeal which the complainant sought should be taken directly to this court. Hence this appeal.

Appellant is an Illinois corporation engaged in the business of asphalt paving. It owns lots 35 and 36, in block 10, in S. J. Walker's Dock addition to Chicago. The lots, contiguous to each other, are situated on the east side of South

Paulina street between Private Railroad street and the south
branch of the Chicago river.  A slip extends north from
the river along the east of appellant's property.  On these
lots appellant has an office building, repair shop, storage
buildings and sheds.  It keeps its portable paving equip-
ment, consisting of tools, wagons, trucks, trailers, loaders,
steam rollers, stone crushers, concrete mixers and gasoline
graders, on the premises.  Appellant's tools, equipment
and supplies are conveyed over South Paulina street.  The
American Car and Foundry Company is engaged in the
manufacture of railroad cars.  It owns or controls all the
land on the east side of South Paulina street from appel-
lant's property south to the river and on the west side of
that street and on both sides of South Wood street between
the river and Private Railroad street.  The car and foundry
company's land is improved by buildings appropriate to the
conduct of its business.  The property in the vicinity is de-
voted to industrial purposes.

South Wood street between South Railroad street and
the south branch of the Chicago river was eighty feet wide
and was the next street west of and ran parallel to South
Paulina street.  On January 1, 1921, the city council of the
city of Chicago passed an ordinance vacating the east four-
teen feet of South Wood street between the points desig-
nated.  Subsequently, on July 2, 1923, the city council va-
cated the west sixty-six feet of South Wood street between
the same points.  On July 18, 1924, an ordinance was
passed by which South Paulina street between the river and
the south line of appellant's property was vacated.  Finally,
on January 2, 1925, the city council passed the ordinance
here attacked.  By this ordinance the west thirty-three feet
of South Paulina street between the south line of appellant's
property extended west and Private Railroad street were
vacated upon condition that the car and foundry company
would, within sixty days after the passage of the ordinance,
(1) pay the city, as compensation for the benefits to accrue

to the owner of the property abutting on the street vacated, $10,256.40, which sum, in the judgment of the city council, equaled such benefits; and (2) file for record in the recorder's office a certified copy of the ordinance. The following plat shows the location of appellant's lots with reference to surrounding property and the streets and public ways of the vicinity:

The checkerboard lines indicate appellant's lots, while the diagonal lines show the property of the car and foundry

company and the vacated parts of South Paulina and South Wood streets.

Prior to the passage of the ordinance in question, South Paulina street, from the south line of appellant's property north to Private Railroad street, was sixty-six feet wide. A granite block pavement occupied the central eighteen feet of the street. Outside of this pavement the street consisted of the natural soil, with a surface of cinders and gravel. There were no curbs. Within the street, west of and parallel to the pavement, there was a railroad track, which near its north end turned northeasterly and connected with the tracks of the Chicago, Burlington and Quincy Railroad Company in Private Railroad street. A second track led from the first at a point a short distance north of appellant's property, and after turning southeasterly across the pavement ran parallel to it to a point south of appellant's property. From the second track two switch-tracks were laid, one into appellant's premises, and the other, further south, into the car and foundry company's property. The track west of the pavement had a switch operated by a lever, which, when down, projected about six inches above the surface of the street. This track had cross-rods, and there were spaces beneath these rods as well as the switch-lever.

The only street over which access may be gained to appellant's premises is South Paulina street. Supplies and equipment taken to or from appellant's plant by land are necessarily carried over it. Traffic with other industries also passes over this street. A count made on six days in May, 1925, by a witness called by the car and foundry company disclosed that an average of 113 vehicles passed over the street each day. A tabulation made on six days in April and May, 1926, by one of appellant's witnesses, showed a daily average of 248 vehicles on the street. Another tabulation made by one of the car and foundry company's witnesses on the same days in April, 1926, but on three other

days in May, disclosed that the average number of vehicles which made use of the street was 150 per day. Of this number it appeared that more than two-thirds entered or left the plants of appellant and the car and foundry company and that the rest moved to and from two industries located on the east side of South Paulina street immediately north of appellant's property. Some of the trucks which passed over the granite block pavement weighed, unloaded, from two to eight tons, and loaded, from two and one-half to eighteen tons. The width of these trucks varied from five to seven and one-half feet.

Upon the question whether the street outside of the pavement was suitable for heavy traffic the evidence was in conflict. Witnesses for appellant testified that it was not solid enough for such traffic and that heavy trucks could not leave the pavement. The district manager of the car and foundry company, on the contrary, testified that a truck loaded with castings, having a total weight of approximately thirteen and one-half tons, had been driven in the street, off the pavement, at a point north of appellant's property, and that the truck did not depress the soil sufficiently to be measured except in a particular spot, where the depression did not exceed one inch. It appeared, however, that shortly before cinders had been unloaded and leveled on the part of the street over which the truck passed. Touring automobiles, it was agreed, made use of the street irrespective of the paved portion.

South Ashland avenue is a through north and south street one block east of South Paulina street. The traffic on South Ashland avenue is heavy and constant. The switching of cars and trains over the tracks in South Paulina and Private Railroad streets often obstructs this traffic. The city sought to avoid these obstructions and the consequent dangers to human life. To remedy this situation the car and foundry company proposed, upon the vacation of the west half of South Paulina street, to replace

the easterly switch-track in that street by an additional track in the part of the street vacated and to run the cars and trains from the new track westerly, instead of easterly, on the tracks in Private Railroad street. By this change the switching of cars would be conducted west of South Ashland avenue. Other reasons assigned for the passage of the vacation ordinance were, that the projection of the rails of the west track in South Paulina street above the street's surface and the existence of the switch and open spaces in the tracks obstructed traffic on the street and promoted accidents; that the operation of railroad cars in a public street was dangerous to human life, and that the city's ensuing liability for personal injuries and property damages should be avoided.

With reference to the effect of the vacation on appellant's property, one witness testified that its trailers drawn by trucks required a clearance of eleven feet, and that an eighteen-foot pavement was scarcely of sufficient width to permit such a trailer to pass traffic moving in the opposite direction. A real estate valuator of considerable experience testified that accessibility is one of the principal elements of real estate value; that traffic cannot move as rapidly or as easily on a street thirty-three feet wide as on a street twice that width; that narrowing a street is a detriment to adjoining property except that to which the vacated portion is annexed, and that while an exact computation was impossible, the instant vacation would, in his judgment, depreciate the value of appellant's property twenty-five per cent.

Appellant contends that the vacation in question was made solely in the interest and for the purposes of the American Car and Foundry Company, and that where the vacation of a street is manifestly for a private and not for a public purpose it is beyond the legislative power and therefore void.

Section I of the act entitled "An act to revise the law in relation to the vacation of streets and alleys," as amended

by an act approved June 30, 1923, (Cahill's Stat. 1927, p. 2489; Smith's Stat. 1927, p. 2754;) provides: "Whenever the city council of any city * * * shall determine that public interests will be subserved by vacating any street or alley, or part thereof, within their jurisdiction, they may by ordinance vacate such street or alley, or part thereof; provided that any such ordinance shall be passed by the affirmative vote of at least three-fourths of the members of such city council * * * authorized by law to be elected; such vote to be taken by ayes and noes and entered on the records of such council or board. Such corporate authorities, in behalf of any such city, * * * may in such case contract for and receive from the owner or owners of property abutting upon such street or alley, or part thereof, so vacated, compensation in an amount which, in the judgment of such corporate authorities, shall be equal to the benefits which will accrue to the owner or owners of such abutting property by reason of such vacation. The validity of any such vacation shall not be questioned by reason of the payment of any such compensation, nor by reason of benefits specially accruing therefrom to the owner or owners of abutting property. The determination of such corporate authorities that the nature and extent of the public use or public interest to be subserved is such as to warrant the vacation of such street or alley, or part thereof, so vacated, shall be final and conclusive, and the passage of such ordinance shall be sufficient evidence of such determination, whether so recited in the ordinance or not. The relief to the public from further burden and responsibility of maintaining such street or alley, or part thereof, so vacated, shall constitute a public use or public interest authorizing such vacation. When property is damaged by the vacation or closing of any street or alley, the same shall be ascertained and paid as provided by law."

330—22

The vacation of a street is an exercise of the legislative power. Subject to the limitations imposed by the constitution, the General Assembly has plenary power to vacate or discontinue streets. When this power is exercised by some subordinate body or agency to which it has been delegated by a general law, it is, within the terms of the grant, the exercise of the power of the General Assembly. *People* v. *City of Chicago,* 321 Ill. 466; *Nielsen* v. *City of Chicago, ante,* p. 301.

The power to pass the ordinance under review was expressly conferred by the amendatory act of June 30, 1923. The validity of the act has been sustained. (*People* v. *City of Chicago, supra.*) While the successive vacations of portions of South Wood and South Paulina streets tend to support appellant's charge that the instant vacation was made to serve the car and foundry company, yet the public interest prescribed by the amendatory act as a justification for the passage of the vacation ordinance exists. Compliance with all the statutory requirements was shown. The elimination of frequent obstructions to the heavy traffic on Ashland avenue by the switching of cars across that thoroughfare and of the dangers ensuing therefrom and the relief of the city from liability for accidents arising out of the maintenance of the switch-track in the vacated portion of South Paulina street and the operation of cars and trains thereon were public purposes which justify the vacation ordinance. Such an ordinance is not rendered void because some private interest may be served by the vacation. Before a vacation ordinance can be declared void, it must clearly appear that no consideration of public interest could have led to its enactment. *Wolbach* v. *Rubens,* 307 Ill. 186.

The amendatory act confers upon the corporate authorities of municipalities wide and ample power to vacate streets and public ways, and, as it is argued, this power may be abused. To avoid this danger the appeal must be made to the General Assembly. The propriety, wisdom and

expediency of a legislative act is exclusively a legislative question, and courts are not authorized to declare a statute invalid because in their judgment it may be unwise or detrimental to the best interests of the State. The constitutionality of a legislative act is determined solely by a reference to the limits imposed by the constitution. The only question for the court to decide is one of power,—not of expediency,—and a statute will not be declared void simply because in the court's opinion it is unwise, unjust or unreasonable. *McCray* v. *United States,* 195 U. S. 27; *Booth* v. *United States,* 184 id. 425; *People* v. *Benson,* 294 Ill. 236; *People* v. *Thompson,* 155 id. 451.

The decree of the superior court of Cook county is affirmed.

*Decree affirmed.*