I am unable to agree with the opinion of the court, holding, in effect, that there is no reasonable basis for the classification sought to be made by the amendment and that such rights under the divorce statute as existed before the amendment do not remain the same.
The effect of the amendment under consideration is to divide married women into two classes — those with and those without living children. The legislature, in classifying objects relating to the safety, welfare, health and morals of the citizens, is exercising a police power. In doing so it is vested with a wide discretion. "Marriage, as creating the most important relation in life, as having more to do with the morals and civilization of a people than all other institutions, has always been subject to the control of the legislature," free from constitutional restrictions. (Hobbs v.Hobbs, 279 Ill. 163; Maynard v. Hill, 125 U.S. 190,31 L. ed. 654.) Such legislation will have the benefit of every presumption that it is valid, and it will not be overthrown as unconstitutional unless it is clearly shown the legislature lacked the power it attempted to exercise. (American AsphaltCo. v. City of Chicago, 330 Ill. 330.) If the statute whose constitutionality is questioned can be construed two ways, one of which will render it constitutional, we must take that view. (Kingston v. Old National Bank of Centralia, 359 Ill. 192.) In so determining we are concerned only with the question of power of the legislature, for it has the right to declare the existence of evils and to adopt means to combat them. The evident wisdom or lack of wisdom of the legislature in so *Page 428 
doing is of no concern to this court. The law does not require that the legislature regulate all possible evils growing out of a given set of circumstances at the same time. What it deems the greater evil may be treated and others ignored. The United States Supreme Court in Lindsley v. Natural Carbonic Gas Co.220 U.S. 61, 55 L. ed. 369, declared the rules by which any contention of unfair classification must be tested when it said: "1. The equal protection clause * * * does not take from the State the power to classify, in the adoption of police laws, but admits of the exercise of a wide scope of discretion in that regard, and avoids what is done only when it is without any reasonable basis, and therefore is purely arbitrary. 2. A classification having some reasonable basis does not offend against the clause merely because it is not made with mathematical nicety or because in practice it results in some inequality. 3. When the classification in such law is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed. 4. One who assails the classification in such law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary." (Citing cases.) These rules met with the approval of this court in Bagdonas v. Liberty Land andInvestment Co. 309 Ill. 103. The distinctions upon which the classification is made must be material as to the situation and circumstances of the individuals in the class and the privileges proposed to be granted them. They, as a class, must have relation, in reason and principle, to their situation and circumstances. (People v. Board of Supervisors, 185 Ill. 288. ) Because a general act would accomplish the same purpose as the particular act questioned which only operates upon a class, and would embrace all related matters in only one group, is not a sufficient reason for declaring such act violative of the constitutional provision now under consideration. *Page 429 
(Crews v. Lundquist, 361 Ill. 193; Winberry v. Hallihan, id. 121.) A classification is not arbitrary if any state of facts can reasonably be conceived that would sustain it. Bowers
v. Glos, 346 Ill. 623.
An examination of the amendments in question reveals nothing to indicate an unreasonable classification or that the rights conferred on married women with children and denied to those who are childless are dependent on blame which may attach to one party or the other. It was the evident intention of the legislature, on the grounds of public policy and welfare, to make a distinction in separate maintenance cases between married couples with children and those without children and on this basis to set a time limit on support payments. It may be that in some instances a hardship would be worked upon a woman who could not have children without any fault of her own. The basis of distinction is the lack or presence of living children, without any attempt to assess blame or credit. Because the legislature did not consider and cover every contingency which might arise is no reason for defeating the main purpose of the amendatory statute. The public policy which finds expression in this statute rests on the assumption that it is not well for persons in these circumstances to be absolutely deprived of all right to marry again, and where it has been sufficiently demonstrated by more than two years' separation that a reconciliation will not occur, and there are no living children to be affected, the law-makers have deemed it expedient and right to establish this as a ground for stopping the payment of support money and as a cause for absolute divorce. The classification rests upon a reasonable basis and is not arbitrary.
Section 13 of article 4 of the constitution provides that no law shall be amended by reference to its title only and that the section amended shall be inserted at length in the new act. The second proviso of the 1935 amendment is charged with amending the Divorce act in several ways: *Page 430 
(1) That it creates a new ground for divorce; (2) that the first section of the Divorce act allows only the injured party to sue while now the party at fault in a separate maintenance action can sue; (3) that it amends section 11, which forbids the obtaining of a divorce through collusion or connivance. As a mechanism for divorce the act as amended is further alleged to be incomplete as to important matters of residence, venue and trial.
The "act in relation to married men and women," before and after the amendment of 1935, was, and is, a complete, separate piece of legislation. The only subject covered by the act is the separate maintenance of one spouse by the other. The first and second provisos added by the amendment of 1935 do not relate to but are a part of the only subject of the act. They deal with the termination of decretal separate maintenance under certain circumstances. Appellant has endeavored to give a greater import to the words "desertion" and "divorce," as used in the act, than circumstances warrant. The two years' living separate and apart under a decree of separate maintenance may not, in fact, constitute a desertion, but as a matter of law, due to legislative mandate, it does constitute desertion for the purpose of divorce. It is true that this type of desertion differs from the desertion specified in section I of the Divorce act, both as regards the time element and the fact that it may be used by the party at fault in the separate maintenance proceeding. That it constitutes a new and additional ground for divorce is beside the point. What shall constitute grounds for divorce is a question of public policy and belongs exclusively to the legislature — the right to say under what circumstances a marriage shall be dissolved. (Embree
v. Embree, 53 Ill. 394.) An amended act complete within itself is constitutional even though it may modify or affect pre-existing statutes. (People v. Beemsterboer, 356 Ill. 432;Steinhagen v. Trull, 320 id. 382.) The Divorce act, in respect to the grounds for divorce — the *Page 431 
procedural and jurisdictional requirements — is not affected as it stood prior to the creation of the second proviso of the amended act in question. Desertion thereunder is still a ground for divorce, whether it be desertion by operation of law or by operation of fact. What additional circumstance shall come under desertion by operation of law amounts only to an incidental modification. The second proviso of the 1935 amendment does not apply to individuals in general who may seek a divorce on the ground of "desertion," as that word is understood in section 1 of the Divorce act. The amended act under discussion is not a divorce statute, and the arguments anent residence, venue, trial, etc., are without merit. It is clear that the party at fault under a decree of separate maintenance who is entitled to sue for divorce on the ground of desertion, as provided in the act, must make use of the facilities provided by the Divorce act for that purpose.
The action for separate maintenance did not exist at common law and is purely the creation of statute, from which the courts acquire jurisdiction to administer the remedy. The main object of a separate maintenance action is to obtain support money. The status of the parties is not in issue but the fact they are living apart is conceded. The right to obtain the money rests upon the determination of one thing: Was the complaining party living separate and apart without his or her fault. (Umlauf v. Umlauf, 103 Ill. 651.) As concerns the money, the decree determines only the amount of money to be paid by the party in fault. When the marriage status is dissolved the payments stop. (Bushnell v. Cooper, 289 Ill. 260.) The decree of separate maintenance does not grow out of a contract which comes within the scope of the constitution prohibiting the impairment of a contract. The separate maintenance decree is simply a judgment for the continuing periodic payments of support money, over which the court retains jurisdiction to modify or vacate at any time for various causes arising *Page 432 
either out of changes in the law or in the financial circumstances of the defendant. There cannot be a certainty of permanent receipt of support money under a separate maintenance decree, because the sole control over the marriage status does not rest with the recipient of the money or the court but is subject at all times to legislative control and to the happening of other contingent event.
However wise or unwise it may have seemed, the enactment of this new statutory ground for divorce was wholly within the constitutional power and discretion of the legislature. Its incorporation as an amendment, not to the Divorce act but to section 1 of "An act in relation to married men and women," did not affect its validity. The fact that women were classified, regardless of their blame for the marital strife, so that those with living children could not be divorced for statutory desertion after they had received alimony for two years while those without living children born of such marriage could be divorced at such time, is not in itself arbitrary or unreasonable. When this criticized distinction is weighed against the immorality that obtains through failure of our separate maintenance laws to grant relief for any cause from the so-called "alimony racket," its objectives seem good and wholesome. Inequalities and some injustice may result in particular instances, as is true under the desertion clause of our present Divorce act, and further corrective legislation may be needed, but these things are not of such substance as to justify an opinion that the amendment is arbitrary and unreasonable, and therefore unconstitutional.
JONES and WILSON, JJ., concur in this dissent. *Page 433