(No. 27017.—Judgment reversed.)
THE PEOPLE *ex rel.* Jesse J. Hill *et al.*, Appellees, *vs.*
FRANZY EAKIN *et al.*, Appellants.

*Opinion filed May 20, 1943—Rehearing denied Sept. 15, 1943.*

GUNN and THOMPSON, JJ., dissenting.

WALKER H. MILLS, Corporation Counsel, and MONROE & ALLEN, for appellants.

JAMES T. WHITLEY, ARTHUR F. DELAHUNTY, and IVAN J. HUTCHENS, State's Attorney, for appellees.

Mr. JUSTICE WILSON delivered the opinion of the court:

On May 29, 1940, the People of the State on the relation of Jesse J. Hill, John L. Howie and William F. Canavan, filed a complaint in the circuit court of Macon county, alleging the invalidity of an ordinance enacted August 31, 1939, by the city council of Decatur, vacating West William street between Summit and Woodlawn avenues and seeking a writ of *mandamus* compelling the restoration of the street to public use. Franzy Eakin, Forrest Eakin, Jeannette A. Buck, Alan N. Buck, the city of Decatur, Charles E. Lee, mayor, and each of the commissioners of the city were made parties defendant. By their complaint, plaintiffs alleged that the attempted vacation of the street by ordinance was for the sole purpose of conveying, without consideration, the exclusive title, possession and use of the vacated portion of West William street to Franzy Eakin, Forrest Eakin, Jeannette A. Buck and Alan N. Buck, defendants, contrary to the public interest and benefit; that the city council was without power or authority to pass the pretended ordinance, and that it was wholly void and of no force and effect. Defendants filed an amended answer denying (a) the stated purpose of the passage of the ordinance, (b) it was contrary to the public interest and benefit or that no public interest was subserved by its passage, and (c) a lack of authority in the city council to pass the ordinance. The cause was heard by the court without a jury and a judg-

ment was entered declaring the ordinance void and directing the issuance of a writ of *mandamus* ordering the restoration of the street to public use. The trial judge has certified that the validity of a municipal ordinance is involved and that the public interest requires a direct appeal to this court.

The petition to vacate was first considered by the city council of Decatur at its regular meeting on August 24, 1939, when a motion was carried directing the corporation counsel to prepare a proper ordinance. A week later, on August 31, at another regular meeting, the vacating ordinance was unanimously approved by the council and ordered to be recorded. It was placed of record in due course. Publicity was given to the proposed vacation ordinance by articles appearing in local newspapers under date of June 21, August 24, 25 and 31, and September 1, 1939. No formal objections to its passage were filed.

The city of Decatur has a population of approximately sixty thousand people, engaged in business occupations and street travel common to cities of like population. West William street, running east and west, was dedicated in 1909 as part of Oakdale addition. As platted, and at present, it is forty feet wide. Originally designated as "Interurban Way," it thereafter became and is now known by its present name. West Main street, the first street south of West William street, is designated as Federal Route No. 36, and extends westerly through Decatur from a point in the business district about two miles east of Summit avenue. The traffic on this street is heavy and fast. It has a posted permissible speed limit of thirty miles per hour. Summit avenue, a north and south street, extends north from West Main street and terminates in Fairview Park. Woodlawn avenue, located one block east of Summit avenue, likewise extends north from West Main street, but its northern terminus extends to, but not through, West William street. A right of way, seventy-

five feet wide, running east and west, abuts West William street on the north to Summit avenue and on the south from Summit avenue west. On this right of way the Illinois Traction System had maintained tracks for the operation of streetcars and an interurban railroad. These tracks were removed and the right of way abandoned for public utility purposes in 1936. To the north of this right of way there was located a large public park, known as Fairview Park. A portion of Sunset Crest addition lies north of the right of way from a point midway between Westlawn and Summit avenues. West William street, as it existed prior to the enactment of the challenged ordinance, according to the evidence, extended west from Cobb avenue to Summit avenue on the south side of the right of way, where it joined with Summit avenue, proceeding north to the north side of the right of way, whence it proceeded west to Westlawn avenue. Little-used extensions from West William street also exist north and south of the right of way short distances east and west from Summit avenue. From Summit avenue west, and north of the right of way, West William street was paved, and from Summit avenue east, and south of the right of way, it was a dirt street, improved with infrequent oil treatments and some grading, gravel and cinders. From Woodlawn avenue east, a curb and gutter had been installed on the south side of West William street. A concrete sidewalk was located on the south side, extending from Cobb avenue on the east to Summit avenue on the west. City busses served the area, traveling west from the business district of West Main street to Westlawn avenue, thence north to West William street, thence east to Summit avenue, and south on Summit avenue through the right of way on West William street to West Main street, thence east on West Main street back to the business district.

The evidence is in but little conflict as to material points. On behalf of plaintiffs, the testimony of business-

men, physicians and housewives is to the effect that the vacated street was in constant general use; that children used it on their way to school and to the park, and that it was used in the manner ordinarily used by pedestrians and vehicular traffic, by nearby residents and others. The principal complaints of residents living east of Summit avenue were because of the claimed denial to them of access by way of West William street to a grocery store located west of Summit avenue and the convenience of a short route to Fairview Park. The residents living west of Summit avenue and north and south of West William street complained because of the claim they and their children were denied the use of a route east across West William street to Taylor avenue, thence south on Taylor avenue to West Main street, where the Dennis school was located and where was installed a portable stop sign; that after the vacation the only means afforded for reaching their different destinations was by way of a street connecting with West Main street, thus increasing the distance required to be traversed. The residents east of Summit avenue also complained because of their inability to board or alight from busses at West William street and Summit avenue, as formerly, necessitating a trip for this purpose to the south side of West Main street, a heavily travelled street, presenting dangers in crossing. Complaint is also made because the use of the twelve-foot alley extending north from West Main street between Summit and Woodlawn avenues is restricted, the alley becoming "dead-ended" and its use limited for garbage collection and other facilities.

The testimony on behalf of defendants conceded the use of West William street, to some extent, by the public. The mayor of Decatur testified he had lived in Decatur more than forty-six years, was familiar with the territory around Summit and Woodlawn avenues, West William street and the park, and that, generally, the vacated block

of West William street was an earth surface way of single track, not in very good shape.

Franzy Eakin, a defendant and interested property owner, testified he lived at the corner of Summit avenue and West William street, immediately south of part of the vacated portion; that he was appointed to the City Planning Board in 1939 for a two-year term expiring 1941, and attended most of the meetings during the period, but that he is no longer a member of the commission. He testified with respect to West William street, east from Summit avenue, prior to the vacation, stating that the contour of the street was slightly downgrade for a distance of about 300 feet, when it rather abruptly declined a distance of forty or fifty feet, and that there was a further decline of three or four feet to the level of Woodlawn avenue, just immediately west of Woodlawn avenue; that from this point east it continued downgrade almost to the alley between Dennis avenue and Oakdale boulevard, and that a heavy upgrade occurs from this point to Cobb avenue. A few feet east of Cobb avenue, the street is dead-ended. He further testified that west of Woodlawn avenue, in the block vacated, there were twenty to twenty-three feet of plum and apple trees and shrubs, extending north twenty-five to twenty-seven feet from its south side; that north of them was a single-track roadway about eight or nine feet wide, with well defined vehicle tracks, and that north of the roadway were four or five feet of shrubs, grass, telephone or electric-light poles, and piles of brush representing an accumulation of years. At Summit avenue, he testified, the right of way and street were substantially the same level; that proceeding east, the right of way maintained a level above the grade of the street; that about fifty feet west of Woodlawn avenue the separation of grade was about two feet; at Woodlawn avenue four to six feet; at Dennis avenue twelve to fifteen feet, and that the separation continued east until Taylor avenue. Eakin further testified that the surface of William street

was not maintained except somewhat incidentally; that about six years before the vacation it was graded, owing to a washout, and oiled; that, on this occasion, some work was done by the city at the east end to maintain a partly passable way; that, in bad weather, at the west end there was a mudhole where water stood for a considerable time after heavy rains, and that the tracks were muddy and not suitable for passage immediately after rains or heavy snows. He stated he first became interested in the rehabilitation of the area in 1936, when the proposed abandonment of its right of way by the streetcar lines was publicly announced; that he desired no usage made which might detract from his home or the vicinity, and opposed the suggested conversion of the right of way into an arterial highway to the west, one of the proposals made; that in June, 1939, he purchased and had surveyed and platted the area comprising the abandoned right of way as a subdivision known as "Interurban Addition;" that the plat was presented to the city council about July 14, 1939; that to put the land in condition for residential use 20,000 cubic yards of dirt were required; that about fifteen modern homes were erected at a cost of six to fifteen thousand dollars each, resulting in increased taxes in excess of $3000 annually; that in connection with the subdivision, space was dedicated at Oakdale boulevard, three blocks east of Summit avenue, and a five-foot concrete sidewalk installed which now joins with two gravel walks in the park constructed by the park board, and that he also opened a street at Oak Crest avenue, west of Summit avenue. Eakin further testified he retained the lot in Interurban Addition north of his home, north of the vacated street, and conveyed to Alan Buck and his wife the next lot east, and directly north of their home. Buck testified as to the acquisition of this lot from Eakin for nominal and other consideration, part of the consideration for the conveyance being his participation in the petition to the council to vacate the street; that he later joined in the petition, and

that, since he and Eakin owned the abutting properties, it was considered desirable to have the street closed. Both of these lots have been incorporated into the home yards of Eakin and Buck, and, subsequently, landscaped, and provision made for vegetable and flower gardens. The taking of this property, and the closing of West William street between Summit and Woodlawn avenues, resulted in the present litigation.

Plaintiffs contend that West William street was not vacated for public purposes or benefit, but that its vacation resulted in the transfer of public property solely for private use and benefit, no public interest being subserved, and that the ordinance was not within the scope of authority of the city council and is, hence, void. Conversely, defendants maintain that the evidence reveals the vacation was for the public interest and benefit, was not solely for private interest and benefit, that the public was relieved of the burden and responsibility of the maintenance of the street, and that the ordinance is valid. In particular, defendants insist that the action of the city council in passing the ordinance is not subject to judicial review, because section 1 of the act to revise the law in relation to the vacation of streets and alleys (Ill. Rev. Stat. 1941, chap. 145, par. 1,) conferring the power to enact ordinances for vacating streets and alleys, makes the action of the council final and conclusive as to the nature and extent of the public use or public interest to be subserved, and declares that the passage of the ordinance shall be sufficient evidence of the determination of the council, whether recited in the ordinance or not.

The power of a city council to vacate streets and alleys is conferred by section 11 of article 69 of the Revised Cities and Villages Act. (Ill. Rev. Stat. 1941, chap. 24.) This section re-enacts, in substance, section 1 of chapter 145 of former Revised Statutes 1874, p. 1092, as amended by Laws of 1921, page 846, and Laws of 1923, page 629, the statute under which the ordinance assailed

was passed. In the statute it is provided that whenever the city council shall determine that public interest will be subserved, it may, by ordinance, vacate any street or alley, provided the ordinance shall be passed by the affirmative vote of at least three fourths of the members. It also provides that the corporate authorities may, in such case, contract for, or receive from the owners of property abutting upon the vacated street or alley, or any part thereof, compensation in an amount equal to the benefits accruing to the owners of such abutting property; that the determination of the corporate authorities as to the nature and extent of the public use or public interest to be subserved, which would warrant the vacation of the street or alley so vacated, shall be final and conclusive, and that the passage of the ordinance shall be sufficient evidence of such determination, whether so recited in the ordinance or not. It is further provided that the relief to the public from further burden and responsibility of maintaining the street or alley or part thereof so vacated shall constitute a public use or public interest authorizing such vacation.

The constitutionality of the Vacation Act was sustained in *People ex rel. Franchere* v. *City of Chicago,* 321 Ill. 466. The fee in streets and alleys is vested in the local municipality in trust for all the citizens of the State and not merely for local use, and the General Assembly has supreme control over them unless restrained by constitutional limitation. (*Heppes Co.* v. *City of Chicago,* 260 Ill. 506.) The only constitutional limitation upon the power of the legislature in the matter of the vacation of streets and alleys is section 22 of article IV of our constitution, which forbids the enactment of any local or special law. In the absence of special constitutional restrictions, the legislature, by virtue of its plenary power, may vacate or discontinue streets or highways, and, since it can only act in the premises through subordinate agencies, it must necessarily have the power to confer upon such agencies all the power which it possesses in this regard. (*City of Chicago* v.

*M. & M. Hotel Co.* 248 Ill. 264.) When such power is exercised by the agency it is the exercise of the power of of the legislature, and, when so authorized, the city council may, without any judicial determination, order the vacation of a street by proceeding in accordance with the applicable statute. (*Catholic Bishop of Chicago* v. *Village of Palos Park,* 286 Ill. 400; *People ex rel. Friend* v. *Wieboldt,* 233 Ill. 572; *Smith* v. *McDowell,* 148 Ill. 51.) The public interest is served by its vacation when the city is relieved from the expense of maintaining an alley used only by a small portion of the public (*People ex rel. Huempfner* v. *Benson,* 294 Ill. 236,) or when the city is freed from liability for injuries to the traveling public by reason of defects in an unimproved alley. *People* v. *City of Chicago,* 321 Ill. 466; *People ex rel. Stern* v. *Elgin, Joliet and Eastern Railway Co.* 298 Ill. 574.

*Nielsen* v. *City of Chicago,* 330 Ill. 301, and *American Paving Co.* v. *City of Chicago,* 330 Ill. 330, are to like effect. In the latter case, this court pointed out that the constitutionality of a legislative act is determined solely by a reference to the limits imposed by the constitution, the only question to be decided being one of power,—not of expediency,—and that a statute will not be declared void simply because in the court's opinion it is unwise, unjust or unreasonable.

The only cases relied upon by plaintiffs on the question of whether a public or private benefit is served, decided after the effective date of the amendment of 1923, are *Gerstley* v. *Globe Wernicke Co.* 340 Ill. 270, and *Ginter-Wardein Co.* v. *City of Alton,* 370 Ill. 101. Both cases involved situations dealing with attempted private uses of public streets and alleys. The statute on vacation of streets and alleys was not involved, and, consequently, the authorities invoked are not applicable.

It is plain that the vacation of the portion of West William street was but part of a comprehensive plan of rehabilitation of a section of the city of Decatur, where

the abandoned right of way was located, which constituted a blight on the community in general. The contour of the street in the block vacated, owing to variations in grade with respect to the remaining portions of the street, presented difficulties in maintenance, from responsibility for which the municipality is now relieved. Likewise, the city is freed from liability for injuries to the traveling public by reason of numerous defects in the street vacated. Both of these considerations constitute public benefits inuring to the city, and under the statute and applicable authorities the requisite public interest is shown by the presence of either. *Nielsen* v. *City of Chicago,* 330 Ill. 301; *People* v. *City of Chicago,* 321 Ill. 466; *People* v. *Benson,* 294 Ill. 236; *People* v. *Elgin, Joliet and Eastern Railway Company,* 298 Ill. 574.

The amendatory act of June 30, 1923, confers upon the corporate authorities of municipalities wide and ample power to vacate streets and public ways. The only recourse against possible abuse of this power is by appeal to the legislature. Again, the propriety, wisdom and expediency of a statute is exclusively a legislative question, and the courts are without authority to declare a statute invalid merely because, in their opinion, it may be unwise or detrimental to the best interests of the State. (*American Paving Co.* v. *City of Chicago,* 330 Ill. 330.) The General Assembly, in 1941, having re-enacted the Vacation Act substantially in its entirety, the legislative intent is evident and is binding on the courts, in the absence of constitutional inhibitions.

The ordinance of August 31, 1939, was valid. The writ of *mandamus* should have been denied. Accordingly, the judgment of the circuit court of Macon county is reversed.

*Judgment reversed.*

Gunn and Thompson, JJ., dissenting.