(No. 39192.— ▮▮▮▮▮▮▮▮

ARLINGTON HEIGHTS NATIONAL BANK, Appellee, *vs.* VILLAGE OF ARLINGTON HEIGHTS, Appellant.

*Opinion filed Nov. 19, 1965.—Modified on denial of rehearing January 24, 1966.*

JACK M. SIEGEL and ROSS, HARDIES, O'KEEFE, BABCOCK, MCDUGALD & PARSONS, both of Chicago, for appellant.

ALTHEIMER, GRAY, NAIBURG, STRASBURGER & LAWTON, of Chicago, (SAMUEL T. LAWTON, JR., of counsel,) for appellee.

Mr. JUSTICE HOUSE delivered the opinion of the court:

This is an action by plaintiff, Arlington Heights National Bank, against the village of Arlington Heights and the members of its board of trustees, defendants, for a declaratory judgment, specific performance and injunctive relief. The circuit court of Cook County granted the bank's motion for judgment on the pleadings and entered a decree in its favor. Upon denial of defendants' motion to vacate, they appealed directly to this court. A constitutional question is involved.

The bank owned a triangular tract in Arlington Heights lying between Deniston Avenue on the west, Campbell Street on the south, and Davis Street to the northeast, together with a tract extending from the northerly line of Davis Street to the southerly right-of-way line of the Chicago and North Western Railroad between Denton Street and Evergreen Street to the east.

On May 8, 1963, the bank and the village entered into an agreement which recited that the village required an easement for construction of a storm-relief sewer and desired dedication of a street over the bank's property, that the bank desired the vacation of Davis Street between Denton and Evergreen, and both parties desired that off-street parking be provided for the bank and others. The agreement then provided for vacation of the described portion of Davis Street, indemnification of the village for attorneys' fees or costs in defense of the vacation, the dedication and improvement by the bank of a commuter street south of the railroad together with a five-foot sidewalk, provided the cost of such improvements not exceed $25,000, the granting of an easement to the village 20 feet wide north of the curb line of Davis Street for construction and maintenance of a storm-relief sewer, a restrictive covenant to be executed by the bank that the parking lot be used solely for off-street parking available to the public for 21 years, the bank to improve and landscape the parking lot in

accordance with a plan to be approved by the village at a cost of not to exceed $2500 and, finally, that on completion of the vacation the bank might submit plans for construction in accordance with the building code and other ordinances of the village.

The complaint alleged the execution of the agreement and the fulfillment of all obligations devolving upon the bank by virtue of its terms. Defendants admitted execution of the contract. In their answer they denied that the improvements were pursuant to any plan, whereas the complaint alleged that the plan known as the "Plaza Parking Plan" was evolved by the bank, the Plan Commission of the village and a planning firm. The defendants also admitted execution of the storm-sewer easement by the bank and construction of the sewer line by the village, dedication of the commuter street and sidewalk and improvement of both in accordance with village specifications, and execution of the restrictive covenant with respect to the parking lot. In fact, the answer admits fulfillment of all obligations under the contract except for a denial of indemnification of attorneys' fees and costs without any affirmative allegations of their existence and a general denial of the banks' allegation that it had performed every covenant and obligation imposed by virtue of the agreement of May 8, 1963, without specification of any obligation which the bank had failed to meet. The defendants go even further in their affirmative defense and say that the remedies prayed for will not lie "for the reason that as shown on the face of the complaint, all elements of said purported contract of May 8, 1963, have been performed by the parties and nothing remains to be executed under the terms of said purported contract". In this state of the record, without more, one would wonder what there is left to litigate.

The problem was created by the vacation ordinance adopted by the village on November 21, 1963, to be effective by its terms upon performance of obligations by the

bank as set forth in the agreement of May 8, 1963, "and the additional acts to be performed by the Arlington Heights National Bank * * *". There then followed additional conditions sought to be imposed upon the bank. Forty-six parking stalls unobstructed to the sky were required; drive-in windows were to be contained in a structure not to exceed one story or 9 feet in height and set back 17 feet; an 18-foot passage way within that portion of vacated Davis Street leading to the drive-in windows was to remain open and unobstructed; the bank was to construct a sidewalk around its building at least 5 feet wide; and it was to relocate three street light standards presently located in and abutting on the vacated portion of Davis Street.

The bank refused to comply with the additional obligations sought to be imposed and filed its complaint for a declaratory judgment that the agreement be held enforceable, asked for specific performance of the contract, including enactment of an ordinance consistent with the contract, and prayed that defendants be restrained from prohibiting the construction of any structure which conforms to the zoning ordinance and building code of the village. After filing of the answer hereinabove outlined, the bank moved for judgment on the pleadings and a decree was entered finding the agreement of May 8, 1963, to be a valid contract between the parties and that the ordinance as passed constituted a breach of contract and was a nullity insofar as it affected the rights of the bank under the agreement. The defendants were directed to specifically perform without limitation or conditions other than those expressly enumerated in the agreement and were restrained from interfering with construction, provided that the structures conform to the zoning ordinance and building code.

It is appropriate at this time to consider whether judgment on the pleadings was proper. Section 45(5) of the Civil Practice Act, (Ill. Rev. Stat. 1963, chap. 110, par.

45(5), authorizes the filing of a motion for judgment on the pleadings. Such a motion admits the truth of facts well pleaded, as distinguished from mere conclusions, together with all fair inferences to be drawn therefrom, (*Schmidt* v. *Landfield,* 20 Ill.2d 89,) and the moving party admits the untruth of his own controverted allegations. 71 C.J.S. 426.

The defendants argue that there are facts which became controverted in the following manner: (1) their general denial of full performance by plaintiff of the May 8, 1963, agreement; (2) their denial that the additional conditions imposed by the ordinance were not provided in the agreement; (3) failure of the plaintiff to deny their affirmative statement that the ordinance was a valid exercise of legislative authority; (4) their denial that the ordinance constituted a breach of contract and that the conditions set forth in the ordinance constituted a departure from the terms of the agreement; and (5) their denial that plaintiff did not have an adequate remedy at law. As to the first reason the denial was not only insufficiently pleaded, but performance was admitted in the affirmative defense. The remainder of the alleged controverted facts are questions of law rather than fact. The agreement of May 8, 1963, admittedly fully executed by the parties, and the ordinance, duly adopted by the village, are before us. The clear-cut issue, aside from the constitutional aspect, is whether the ordinance breached the prior agreement. This can be resolved by an examination and comparison of the two instruments against the background of the pleadings.

As a prerequisite to the vacation of the portion of Davis Street in question, the ordinance not only includes the performance by the bank of the obligations contained in the original agreement as compensation for the vacation, but adds further obligations numbered 1 to 4 which it designated as "additional acts to be performed." These will be discussed in the order they appear in the ordinance. No. 1 sets out the number of parking stalls, the angle of the stalls,

restricts their use to off-street parking, and provides that the parking lot "shall remain open and unobstructed to the sky". This is substantially in accord with the agreement. No. 2 provides for a passageway leading to the drive-in windows and restricts the location and height of a structure housing the drive-in windows. This cannot be justified under the right to approve the parking-lot plans since the drive-in windows are not part of the parking lot. Nor, as hereinafter explained, can it be justified under the provision of the agreement for submission of plans to the village for construction of an enlarged building and drive-in windows. No. 3 imposes the duty upon the bank to build a five-foot sidewalk around its building, and No. 4 requires the bank to relocate at its own expense three street-light standards located within the street area to be vacated. Each constitutes a departure from the terms of the original contract.

The argument that the village has the power to dictate, by means of its ordinance, the plans for enlargement of the bank's facilities is without merit. It is bottomed upon a provision of the agreement reading: "The Village agrees that on the completion of the vacation the Bank may submit plans to the Village for the construction of an enlarged building and/or 'drive-in' bank windows in the vacated portion of Davis Street along the south line of Campbell Street west of Evergreen Street, construction to be in accordance with building code and other ordinances of the Village." There is no reservation of the right to specify plans in this paragraph. At most, it contemplates submission of plans for construction which meet the standards fixed by the building code and appropriate ordinances.

Equally without merit is the contention that plaintiff has an adequate remedy at law and is not entitled to equitable relief. Defendants state that the ultimate relief requested is the right to build proposed structures and suggest that if the plans submitted met the valid requirements of the village ordinances, a writ of *mandamus* to secure the

required building permits would lie. But that is not the issue. This is not a suit to compel the issuance of building permits, but is rather to declare rights under the agreement and have that agreement specifically performed. The only reference to building construction in the prayer of the complaint is that the defendants be enjoined from interfering with construction "providing that said structure conforms to the zoning ordinance and building code of said Village as the same presently exist or may exist at the time of such construction." The remedy chosen is a proper one.

The trial court, after finding full compliance by the bank, directed the village to specifically perform by the enactment of an ordinance without conditions other than those contained in the agreement of May 8, 1963.

Final implementation of the agreement between the parties could only be accomplished by the adoption of a vacation ordinance in accordance with the terms of the agreement. Defendants assert, however, that the court's direction to vacate by proper ordinance is a constitutional violation of the separation-of-powers article and of section 1 of article VI which vests only judicial power in the courts.

It is elementary, of course, that the adoption of an ordinance is a legislative function and vacation of streets and alleys must be accomplished by ordinance under section 11—91—1 of the Illinois Municipal Code, (Ill. Rev. Stat. 1963, chap. 24, par. 11—91—1.) It provides that when the corporate authorities determine that the public interest will be subserved, vacation shall be accomplished by passage of an ordinance by the affirmative vote of $\frac{3}{4}$ of the legislative body. It further provides that an ordinance may contain a condition that it not become effective until abutting owners pay compensation equal to the benefits accruing to them by the vacation.

Defendants place reliance upon two lines of cases. The first commenced with *People ex rel. Franchere* v. *City of Chicago,* 321 Ill. 466, which arose following the 1923

amendment authorizing municipalities to demand compensation as a condition precedent to vacation. The court held that exercise of the power was within the discretion of the corporate authorities without any judicial determination of reasonableness. (See also *Nielsen* v. *City of Chicago,* 330 Ill. 301; *American Asphalt Paving Co.* v. *City of Chicago,* 330 Ill. 330; *People ex rel. Hill* v. *Eakin,* 383 Ill. 383.) None of those cases dealt with the power of the courts to enforce a vacation agreement which, as here, provided for an ordinance upon receiving the agreed compensation.

The second line of cases involved the question of whether the courts could restrain passage of ordinances and resolutions. In *Stevens* v. *St. Mary's Training School,* 144 Ill. 336, the issue was whether the courts could restrain county officers from executing a contract for payment of aid to a private school. The court answered in the negative. "The weight of authority and the tendency of the more recent decisions are in favor of the position, that the restraining powers of the court should be directed against the enforcement, rather than the passage, of unauthorized orders and resolutions, or ordinances, by municipal corporations." (144 Ill. at 351.) This rule has been followed in subsequent cases. See *Fletcher* v. *City of Paris,* 377 Ill. 90, where the court refused to restrain the holding of an election which was a necessary step in the process of bringing the terms of an ordinance into existence; and *Roby* v. *City of Chicago,* 215 Ill. 604, where the trial court's dismissal of a suit to restrain the granting of a street railway franchise was affirmed.

Plaintiff counters with authority to the effect that specific performance will be granted against a municipality, including the enforcement of a contract for the sale of real estate. (McQuillin, Municipal Corporations, 3rd ed. sec. 29128; *City of Aurora ex rel. Egan* v. *Young Men's Christian Association of Aurora,* 9 Ill.2d 286.) There

seems little doubt that in a proper case specific performance will lie against a municipality.

Here a complete contract was entered into by which compensation to the village consisted of the dedication and construction of a street and sidewalk, the acquisition of an easement for construction of a storm sewer over land presently owned by the bank, and receipt of a covenant for public use of a parking lot to be laid out and constructed by the bank. True, the agreement does not follow the language of the statute that the village board "determine" the vacation to subserve the public interest, but it does recite that the village "requires" the easement and "desires" the street dedication and the furnishing to it of off-street parking facilities. The village agreed "by proper ordinance" to vacate the described portion of the street, such vacation to be "effective upon the dedication of the commuter street." The bank not only performed by dedicating the commuter street which was the prerequisite to the ordinance becoming effective, but performed the other obligations assumed by it as well.

We are of the opinion that the recitals of the agreement on the part of the village constituted a determination that the vacation was in the public interest, and that the obligations placed upon the bank constituted compensation to the village in lieu of cash. The ordinance which was passed specifically recited that the corporate authorities had determined that vacation would subserve the public interest and that it would become effective "upon payment of compensation for said vacation which compensation is to include the performance of certain acts and obligations by the Arlington Heights National Bank all as set forth in a certain agreement of May 8, 1963."

If section 3 of the ordinance had stopped there it would have been in accord with the agreement in all respects. But, there then was inserted the additional obligations. This the

village could not do. As heretofore noted, the determination that it was in the public interest to vacate had been made, the compensation for the vacation had been fixed and paid, and the only thing remaining to be done was enactment of an ordinance incorporating the provisions of the agreement. The additional obligations sought to be imposed upon the bank were a nullity and *dehors* the terms of the agreement. Enforcement of the agreement according to its plain terms in no way infringes the discretionary power of the board since it had already exercised its discretion.

The decree of the circuit court of Cook County is affirmed.

*Decree affirmed.*